STATE TRUST CO. OF NEW YORK v. CITY OF DULUTH.

(Circuit Court, D. Minnesota, Fifth Division. November 8, 1900.)

No. 333.

1. MUNICIPAL CORPORATIONS—CONTRACTS—CONSTRUCTION BY PARTIES.

By a contract between a water company and a city, the company was required to sluice the gutters in the city without charge. The city subsequently constructed on some streets what were termed "sanitary sewers," which to some extent, at least, served the purpose of gutters; and the company, on its request, flushed such sewers without charge for a period of nine years, and until a change in its management. *Held*, that such action constituted a practical construction of the contract by the parties as including such sewers under the term "gutters," and precluded any recovery by the company for flushing the same.

2. SAME—REQUISITES OF CONTRACT TO BIND CITY.

A water company cannot recover against a city on a claim for flushing sewers, amounting to a considerable sum, in the absence of some contract entered into on behalf of the city, by somebody authorized to bind it, to pay for such service.

On Motion by Defendant for Judgment after Plaintiff had Rested Its Case.

Washburn, Lewis & Bailey, for plaintiff.
J. B. Richards, for defendant.

LOCHREN, District Judge (orally). I am inclined to think that the plaintiff cannot recover. The ordinance constitutes a contract between the parties, and requires that the water company shall sluice the gutters without charge. The purpose is to cleanse the gutters, and gather and discharge therefrom whatever offensive matter may be deposited on the streets, or come through drains from the adjoining houses, stores, and establishments, which would make the gutters, unless washed out and cleansed, dangerous to the public health and offensive to sight and smell. It is not simply the rainfall running in the gutters in a rainstorm that makes them dangerous to health, but it is what they gather from buildings and human industries. A sewer does the same work, and performs a more extended service, by carrying off matter, also, which would be too offensive to be allowed to pass into open gutters; and sewers, also, must be cleansed, for the safety of the public health. They may be called covered gutters. Though they are in the earth, they serve a like purpose, and I think they are ordinarily so constructed that they act in connection with the gutters; the latter being discharged into the sewers through catch-basins at street crossings. I do not know how it is done in this city, but that is the way it is done in Minneapolis, with ordinary

sewers. I do not exactly know what these sanitary sewers are, but they serve for carrying off offensive matter, and it is necessary that they should be cleansed. They serve the purpose of gutters, by carrying off the matter which would be carried off by the gutters if the sewers were not there, and also a large amount of other offensive matter. So I think it would not be too great a stretch of construction to hold that they come under the terms of the word "gutter," for the purposes for which, under the ordinance, the company contracts to cleanse the gutters. But the evidence shows, further, that such was the construction acted upon by the parties for a considerable time, and it seems to me that the company is foreclosed by such construction. The evidence is that the construction of the sewers commenced in 1886, though they were not, aside from Superior street, perhaps, constructed to a very large extent immediately; but from 1890 to 1891 they were constructed in other places, and this service of flushing them was performed without any claim for compensation being made until 1896. In 1894 the company began to keep an account or record of the amount of water that was used, or at least of the hydrants which were opened, and the length of time that they severally remained open. That would not indicate, I think, that the company regarded itself as being entitled to compensation for that service, for the reason that there might be very many other considerations which would move the company to keep account or to have some knowledge of the amount of water which was running through its works, or the amount that was used in that manner. So it does not appear that this was a matter which even the company regarded as giving it title to compensation, until the change of management in 1896. After that the bills were presented. I think that up to that time it may be fairly considered both parties acted upon the supposition that the flooding of the sewers was included in the obligation to do the same thing to the gutters. This was so for a considerable length of time, commencing perhaps with a small beginning, but running through nine years of time; and it seems to me that where the construction of the terms of the contract is one which might be reasonably assumed by either party, and was acted upon by both parties for such a length of time, it may be regarded as the construction which was acted upon by both parties at the time that the service was performed, without any anticipation of payment for it.

Again, I think there is considerable force in the other position taken by counsel for defendant,—that, if this is something which is beyond the terms of the contract contained in the ordinance, then there is not any evidence showing any contract by which the city would be bound to pay for the flooding of these sewers, which is a considerable and not a trifling matter, and that, if the city is to be bound, there must be some contract shown on the part of the city. The city would not be bound simply by the order of some employé about a municipal office. As important a matter as this would require consideration by a body authorized to obligate the city. But there does not appear to have been any action taken by the city council, or any contract entered into on the part of the

city. It was simply a calling upon the waterworks for the flushing of these sewers, as they might have been called upon to flush the gutters. I do not think there is any chance of recovery in this case. Judgment is ordered for the defendant.