BISMARCK GAS COMPANY, a Corporation, Plaintiff, v. DISTRICT COURT OF BURLEIGH COUNTY, North Dakota, and Honorable W. L. Nuessle, Judge of said District Court, Defendants.

(170 N. W. 878.)

**Municipal corporations — public service corporations — franchise.**

As it appears, the city of Bismarck granted to plaintiff's assignor a franchise to use the streets of the city of Bismarck to serve gas to the city and the people. The franchise did not fix the rates for gas, but it did clearly fix the highest rate that might be exacted. And the grantee agreed in writing to furnish gas at prices not to exceed the limited rate. There is no claim that the contract was made without consideration, or that it was effected by fraud, duress, or imposition. Hence the gas company has no right to charge for gas any sum in excess of the limited rates.

Opinion filed November 30, 1918. Petition for rehearing denied January 9, 1919.

Application for writ of prohibition directed to the District Court of Burleigh County and Honorable *W. L. Nuessle,* Judge of said Court.

Alternative writ quashed and action dismissed.

*Miller, Zuger, & Tillotson,* for plaintiff.

Section 3818, subdivisions 5 and 7, Compiled Laws of 1913, does not authorize making of a contract which either fixes or regulates rates, but merely authorizes the granting of a franchise or license to use the streets. Madison v. Madison Gas Co. (Wis.) 8 L.R.A.(N.S.) 520; Winchester & L. Turnp. Road Co. v. Croxton (Ky.) 33 L.R.A. 177; Benwood v. Public Service Commission (W. Va.) L.R.A.1915C, 261; State ex rel. Webster v. Superior Ct. (Wash.) L.R.A.1915C, 287; Central Transp. Co. v. Pullman Palace Car Co. (U. S.) 35 L. ed. 55.

*H. F. O'Hare,* City Attorney, for defendants.

Where a city grants a franchise to a corporation in which franchise the maximum rates allowed to be charged for gas were stated, and the

NOTE.—Authorities passing on the question of effect of provision of franchise in respect to rates upon the right to raise the rates are collated in a note in L.R.A. 1915C, 287, on right to raise rates of public service corporation fixed by franchise.

41 N. D.—25.

corporation duly accepts same, the corporation is bound by the terms of the franchise. Cleveland v. Cleveland City R. Co. 194 U. S. 517, 24 Sup. Ct. Rep. 756; Vicksburg v. Vicksburg Waterworks, 206 U. S. 496, 27 Sup. Ct. Rep. 762; Walla Walla v. Walla Walla Water Co. 172 U. S. 1, 19 Sup. Ct. Rep. 77; Walla Walla Water Co. v. Walla Walla, 60 Fed. 957; Cleveland v. Cleveland Elec. R. Co. 201 U. S. 529, 26 Sup. Ct. Rep. 513; Detroit v. Detroit Citizens' St. R. Co. 184 U. S. 368, 22 Sup. Ct. Rep. 410; State v. Seattle etc. R. Co. 64 Wash. 167, 116 Pac. 638; State v. Seattle etc. R. Co. 62 Wash. 124, 113 Pac. 260; Noblesville v. Noblesville Gas Co. 157 Ind. 162, 60 N. E. 1032; People v. Barnard, 110 N. Y. 548, 18 N. E. 354; Selectmen v. Worcester Consol. St. R. Co. 199 Mass. 279, 85 N. E. 507; Galveston etc. R. Co. v. Galveston, 90 Tex. 396, 39 S, W. 96; Detroit v. Ft. Wayne etc. R. Co. 95 Mich. 456, 54 N. W. 958; Omaha Water Co. v. Omaha, 147 Fed. 1; State v. Superior Ct. 67 Wash. 37, 120 Pac. 861; Manitowoc v. Manitowoc etc. Traction Co. 145 Wis. 13, 129 N. W. 926; Home Telephone Co. v. Los Angeles, 211 U. S. 265, 29 Sup. Ct. Rep. 50.

The right of the state to regulate rates by compulsion is a police power, and distinct from the right of a city to contract with a public service company upon the terms of a franchise. Woodburn v. Pub. Service Com. 82 Or. 114, 161 Pac. 391; Benwood v. Public Service Commission, 75 W. Va. 127, 83 S. E. 296; State v. Sup. Ct. 67 Wash. 37, 120 Pac. 861; Monroe v. Detroit etc. R. Co. 187 Mich. 364, 153 N. W. 669; Manitowoc v. Manitowoc, etc. Traction Co. 145 Wis. 13, 129 N. W. 925; Charleston Consol. R. Co. v. Charleston, 92 S. C. 127, 27 S. E. 390; Duluth St. R. Co. v. Railroad Com. 161 Wis. 24, 152 N. W. 887; Calif. Oregon Power Co. v. Grants Pass, 203 Fed. 173; Northwildwood v. Bd. of Pub. Utility Comrs, 88 N. J. L. 81, 95 Atl. 749; Worcester v. Worcester Consol. St. R. Co. 196 U. S. 539; Bellevue v. Ohio Valley Water Co. 245 Pa. 114, 91 Atl. 236; Union Dry Goods Co. v. Georgia Pub. Service Corp. 142 Ga. 841, 83 S. E. 946; Christophulus v. Geo. Pub. Service Corp. 142 Ga. 848; Pocatello v. Murray, 21 Idaho, 180, 120 Pac. 812; State v. Superior Ct. 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913D, 78; S. P. Ry. Co. v. Campbell, 230 U. S. 537, 33 Sup. Ct. Rep. 1027.

A franchise given by a city is a contract within the protection of

the Federal Constitution, subject to the right of the state to regulate the rates named in such franchise. Logansport Gas Co. v. Perue, 89 Fed. 185; Muncie Natural Gas Co. v. Muncie, 60 L.R.A. 822; Westfield Gas & Min. Co. v. Mendenhall, 142 Ind. 538, 41 N. E. 1033; Marble Co. v. Ripley, 10 Wall. 339; Franklin Telegraph Co. v. Harrison, 175 U. S. 459, 471; Guffy v. Smith, 237 U. S. 101; Berg v. Erickson, 234 Fed. 817; Hoyt v. United States, 149 U. S. 1; Re Jauvin, 174 Mass. 514, 55 N. E. 581; Pond, Public Utilities, §§ 431, 432; Mpls. Gas Light Co. v. Mpls. (Minn.) 168 N. W. 588.

ROBINSON, J.  The plaintiff avers that in 1915 the city of Bismarck granted to one Frank Ployhar a franchise or license to use the streets of the city of Bismarck to serve gas to the city and the people therein for illuminating, light, and heating.  The franchise was granted by ordinance, and Frank Ployhar made a written acceptance of the same.  He agreed to accept all the provisions of the ordinance and to fully perform all of its obligations.  He agreed to furnish gas of the quality prescribed by the ordinance at prices not to exceed the sums specified in the ordinance.  Ployhar assigned his grant and contract to the plaintiff, and it at once proceeded to lay out and extend and construct its gas plant, and to charge the maximum rates.  Now the company attempts to exact from its customers and the city a sum in excess of the maximum rates.  Then an action was brought to restrain such exaction.  Then the gas company obtained a writ to restrain the district court from proceeding in the action, on the ground that it had no jurisdiction.

The position of the plaintiff is that the limitations of its grant and the contract between its grantor and the city are void; that it has a right to use the grant and disregard the limitations, and the city has no remedy by an appeal to the courts; that its remedy, if any, is by an appeal to the railroad commissioners under chap. 208, Laws 1915. It is the opinion of the writer, speaking for himself alone, that this act permits an appeal to the railroad commissioners to fix rates in cases of *municipally owned plants.*  The fifth and last section of the act declares that its purpose is to place the regulation of rates under the control of the railroad commissioners, subject to the right of review by the courts.  However, the first four sections of the act and all the

procedure for rate fixing relates entirely to "municipally owned plants." If the purpose of the act had been to give the railroad commissioners a general power to fix rates, then there was no occasion for using the limiting term "municipally owned plants." However that may be, it is certain this is not a rate fixing case, and hence chap. 208 has no application.

The questions are: Had the city power to grant the charter? Had the plaintiff and his grantor power to accept the grant and to make a special written contract to observe the conditions of the same? May the gas company accept the benefits of the grant and repudiate its obligations? There is no claim that either the plaintiff or its grantor were induced to accept the grant and its obligations by any fraud or deception, or that the terms and conditions of the grant as they existed at the time were in any way unfair or unjust. There is no averment or showing that the grant has not been a source of profit to the plaintiff; no claim that the city was under any obligation to grant the charter. And if the city was free to grant or refuse the charter, it must have been free to prescribe the terms and conditions of the same. And the gas company and the grantor must have been free to accept or to refuse the grant. There was no compulsion, but assuredly the company was not free to accept the grant and its benefits and to repudiate its conditions. The city must have a right to insist that the company shall observe the conditions or that the charter shall be forfeited. That is plain common sense. If the company insists on holding its grant and fails to observe its conditions, that is a gross wrong for which the city has a constitutional right to a remedy by due process of law.

The plaintiff cites several cases holding that the courts have no jurisdiction to fix rates, but the question presented is not one of rate fixing. The question is: May the gas company or any party accept a grant of a charter and avail itself of the benefits and repudiate its conditions and obligations? May it accept from the city a valuable charter, fixing a maximum rate for gas, and then turn around and charge twice the maximum rate? And in such a case shall we say the city may not invoke the courts to forfeit the charter or to enforce its conditions? Assuredly it is a familiar rule of law that a grant upon condition may be forfeited for a failure to observe its conditions.

But if the question presented be merely one of contract, then clearly

it was competent for the city in granting a franchise to protect itself and the people of the city by contracting for maximum rates. That is in accordance with a well-reasoned decision by Judge Amidon in a Moorhead case. He says: "Here there has been no reduction by the city of the franchise rates. It simply stands upon its contract and asks protection against the rates being raised by the company. The party changing the franchise rates is not the city, but the public utility company, and the city is only asking the court to compel the company to perform its contract and furnish gas at the rates for which the company has agreed to be bound by." He cites many authorities showing that neither at law nor in equity is a party relieved from a contract by reason of the fact that performance becomes unprofitable. He says of contracts free from mistake, fraud, or imposition, that parties must be left free to make their own contracts, and it is the duty of the courts to enforce them as made. And this applies to contracts between municipalities and public utility companies. While Judge Amidon cites many authorities to sustain his decision, which is manifestly sound and in accordance with elementary principles, there is no reason for magnifying this case by any review of the authorities. It turns upon plain elementary principles, as above stated. The alternative writ was improvidently issued, and the case must be dismissed, with costs.

GRACE, J. I concur in the result.