WESTERN ELECTRIC COMPANY, a Corporation, Appellant, v. CITY OF JAMESTOWN, a Municipal Corporation, Respondent.

(181 N. W. 363.)

**Electricity — contract for current held renewed by practical construction.**

1. In an action by a public service corporation to recover for electric current furnished a city, where, pursuant to a contract for one year, made in 1912, the corporation has furnished electric current for street lighting from

NOTE.—Cases passing upon the question as to the power to regulate rates as affected by charter or franchise provisions or by contract are presented in notes in L.R.A.1915C, pp. 261, 282, and 287, on right to change rates of public service corporation fixed by franchise or charter.

For cases passing upon the general question of power of municipality apart from contract to regulate the rates to be charged by public service corporations, see notes in 33 L.R.A.(N.S.) 759, and 43 L.R.A.(N.S.) 994.

On privilege of using streets as a contract, within constitutional provision against impairment of obligation of contract, see note in 50 L.R.A. 142.

On the question of jurisdiction of public utilities commission over rates as limited by constitutional or statutory power of municipality to regulate utilities, see note in L.R.A.1918D, 315.

year to year and has accepted payment at the rate stipulated in such contract, although in 1914 the city council adopted a resolution canceling such contract, and where, in February, 1918, the corporation gave notice of an increased or surcharge rate of 10 per cent upon the theretofore existing rate and continued to furnish such current for such purpose to the city without the city accepting or agreeing to pay such increased rate, and continued thereafter to receive payment for the current furnished under the contract rate stipulated, it is *held* that the original contract was continued and renewed by practical construction through the acts and conduct of the parties, and that the corporation is not entitled to recover the increased or surcharged rate.

**Electricity — company held not entitled to more than franchise rate—Public Utilities Act held not to affect rates for electric current under franchise.**

2. In such action by a public service corporation to recover from a city for electric current furnished in operating city water pumps, where in the franchise to the corporation granted in 1902 it was provided that the corporation should pump water into the standpipe which the city has not located at the rate of $2.50 per 100,000 gallons, and where pursuant thereto until 1910 it furnished such power by means of a steam pump and thereafter, when the city had changed its wells and pumps, furnished electric current for their operation for a period of eight years, all at the rate stipulated in the franchise and at which rate it received payment, and where since August 1, 1918, it has furnished current and has sought to charge the city at the current rate charged to private consumers, all with full notice that the city claimed such service at the prescribed franchise rate, it is *held:*

(a) That the corporation was obligated under the terms of its franchise to furnish such electric current at the agreed rate.

(b) And that the Public Utilities Act (Laws 1919, chap. 192), effective March 5, 1919, granting to the Board of Railroad Commissioners the power to regulate electric light rates, did not abrogate or affect the terms and consideration of the franchise granted in 1902.

**Electricity — construction of franchise held to bar company from charging for electric current for city library.**

3. In an action by such public service corporation to recover from a city the reasonable value of electric current furnished for a library and reading room, where a public library and reading room was maintained in a room of the city hall from 1910 to 1918 for which the corporation furnished electric current until 1914, without specific request therefor by the city, and without any bill being presented for payment of such current, and where, after presentation of a bill for such current furnished, the same was rejected by the city, and, without further negotiations, the corporation continued to furnish electricity up to the time of the commencement of this action, with knowledge that the city claimed that the corporation was obligated to furnish such elec-

tricity under its franchise, it is *held* that the parties by their acts and conduct have adopted a practical construction of the franchise, and that there existed no contract, either express or implied, to pay the corporation any money for the electric current so furnished.

Opinion filed January 4, 1921. Rehearing denied February 7, 1921.

Action in District Court, Stutsman County, *Nuessle,* J., to recover for electric current furnished for street lighting, for city water pumps, and for a library and reading room.

The defendant has appealed from a judgment of dismissal in favor of the city.

Affirmed.

*S. E. Ellsworth,* for appellant.

"To constitute a tenancy from month to month a special agreement to that effect may be made, or the tenancy may be implied from the manner in which the rent is paid. Thus a lease for an indefinite term, with monthly rent reserved, creates a tenancy from month to month." 24 Cyc. 1034; Blumenberg v. Myres (Cal.) 91 Am. Dec. 560; Oregon & W. R. Co. v. Vulcan Iron Works (Wash.) 106 Pac. 1120.

"A tenancy from month to month or year to year arises where no definite time is agreed upon and the rent is fixed at so much per year or month, as the case may be, and is terminable at the expiration of, any period for which rent has been paid." Finch v. Moore, 50 Minn. 116, 52 N. W. 384; Thompson v. Baxter (Minn.) 119 N. W. 797; Douglass v. Seiferd, 41 N. Y. Supp. 290; Proskey v. Colonial Hotel Co. (Nev.) 133 Pac. 390.

"Where one of the parties to a contract, either before the time for performance or in the course of performance, makes performance or further performance by him impossible, the other party is discharged, and may sue at once for the breach, as in the case of renunciation of liability." 9 Cyc. 639.

"If the acts of one party to a contract be such as necessarily prevent the other from performing on his part, the party thus prevented from performing may abandon under the quantum meruit rule." Dubois v. Canal Co. 4 Wend. 285, id. 12 Wend. 334; Canal Co. v. Dubois, 15 Wend. 87; Merrill v. R. Co. 16 Wend. 586; 2 Parsons, Contr. 6th ed.

222; Spaulding v. Coeur D'Alene R. & Nav. Co. 51 Pac. 408; United Electric Light Co. v. East Pittsburgh (Pa.) 79 Atl. 232.

"One who voluntarily disables himself from performing specifically his contract becomes at once liable in damages." Bolles v. Sachs (Minn.) 33 N. W. 863.

"Contract was made in contemplation of the continued existence of a subject-matter which is after the making of the contract destroyed without the fault of either party; non-performance is excused." Levy v. Caledonian Ins. Co. (Cal.) 105 Pac. 598; Dare v. Spencer (Ind.) 5 Blackf. 49; Crabtree v. Messersmith, 19 Iowa, 179.

"Where municipal officials have discretionary power as to the conditions to be annexed to a franchise they have the authority subsequently to waive the conditions which they impose." Curtis, Electricity, § 225; Gathright v. H. M. Byllesby & Co. (Ky.) 157 S. W. 45.

*F. J. Kneeland* and *Thorp & Rittgers,* for respondents.

"Renewal for same term and wages presumed. When after the expiration of an agreement respecting the wages and the term of service the parties continue the relation of master and servant, they are presumed to have renewed the agreement for the same wages and term of service." Comp. Laws 1913, § 6137; Dickinson v. Norwegian Plow Co. 101 Wis. 157, 76 N. W. 1108; Kellog v. Citizens Ins. Co. 94 Wis. 554, 69 N. W. 362; Laughlin v. School Dist. 98 Mich. 523, 57 N. W. 571; Chamberlin v. Detroit Stove Works, 103 Mich. 124, 61 N. W. 532.

Contracting for a rate and service is one thing, and regulating rates is quite a different thing. Borth v. Co. (Mich.) 18 L.R.A.(N.S.) 1197; Illinois Bank v. City (U. S.) 34 L.R.A. 518; 4 McQuillin, pp. 3665, 3699, and cases cited.

This contract is valid, and cannot be affected by the utility law or by the power of the utility commission to regulate rates. Superior v. Co. (Wis.) 122 N. W. 1022; Tampico Farmers Mut. Teleph. Co. (Ill.) P.U.R.1915A, 24.

"The right of the state to regulate rates by compulsion is a police power, and must not be confused with the right of a city to exercise its contractual power to agree with a public service company upon the terms of a franchise." Renwood v. Public Service Commission, 75 W. Va. 127, L.R.A.1915C, 261, 83 S. E. 295; State ex rel. Webster v.

Superior Ct. 67 Wash. 37, L.R.A.1915C, 287, 120 Pac. 861, Ann. Cas. 1913D, 78; Munreo v. Detroit, M. & T. Short Line R. Co. 187 Mich. 364, P.U.R.1915E, 325, 153 N. W. 669; Woodburn v. Public Service Commission (Or.) L.R.A.1917C, 105.

*Statement.*

BRONSON, J. This is an action to recover for electric current furnished the city. The action was tried to the court without a jury. The plaintiff has appealed from a judgment of dismissal in favor of the city. This same action, upon a demurrer to the complaint, was previously before this court. 43 N. D. 437, 175 N. W. 622. In its amended complaint the plaintiff seeks to recover for a first cause of action, the reasonable value of electric current furnished to the city for lighting its streets and public places between February 1, 1918 and July 31, 1918, amounting to $253; for a second cause of action the reasonable value of electric current furnished the city as power in the operation of city pumps, from August, 1918, to November, 1919, in amount $11,975.46; for a third cause of action the reasonable value of electric current furnished in lighting a public library and reading room in the city hall from December 28, 1908, to date, in amount $1,402.02.

The answer generally denies the complaint and alleges a written agreement for street lighting, and, pursuant thereto, the furnishing of electric current by the plaintiff; alleges a franchise granted to, and accepted by, the plaintiff by the terms of which plaintiff became bound to furnish to the city free electric current to its city hall and engine house without cost and also to pump water for the city at a certain specified rate, and, further, that pursuant to such ordinance the plaintiff has . so furnished electric current in pumping water for the city and in furnishing electric light to a library room and reading room. It further alleges that no liability of the city was ever created by the city council as required by law, to pay the demand made for the electric current furnished.

The facts in the record necessary to be stated are substantially as follows:

In 1902 the city enacted an ordinance granting to the Jamestown Electric Light Company a franchise for a period of twenty-five years,

to use its streets for poles, wires, transmission of electricity, etc., in the operation of an electric light and power plant. The plaintiff is a successor in interest, and exercises its privileges as a public service corporation in the city pursuant to the terms of such ordinance. The ordinance provides that, during its life, the company shall furnish electric current to light the city hall and engine house of the city and the city offices therein without cost to the city, and also furnish free fire protection to the citizens and pump water into the standpipe which the city has now located, at a rate of $2.50 per 100,000 gallons. The ordinance also stipulated a maximum rate that shall not exceed 15 cents per K.W. during the life of the franchise for electricity furnished consumers, either public or private.

In 1912 a white way was established upon the streets of the city. In March, 1912, the plaintiff submitted to the city council a proposition to furnish current for lighting this white way, for a term of one year, upon a flat rate, which, subject to a slight modification agreed upon, was accepted by the city council. Thereafter current was furnished for this white way at the flat rate basis for which bills were rendered and paid by the city. In February, 1918, the plaintiff added a 10 per cent increase to be known as a surcharge to the street lighting rate. For six months, from February to July, 1918, this surcharge amounted to $253, the amount of plaintiff's first cause of action. The city council refused payment of such surcharge, although it has otherwise paid the regular flat rate which amount has been monthly received by the plaintiff. In January, 1914, it appears that the city council by an "aye" and "nay" vote upon a resolution, declared the contract made in March, 1912, to be canceled and annulled. Nevertheless thereafter the plaintiff continued to furnish electric current under the same arrangement as theretofore existed until the month of February, 1918. From 1902 to 1910 the plaintiff furnished power through the steam of its boilers for pumping water from a well located adjacent to its plant and was paid at the rate provided in the franchise. Then in 1910 the city made changes in its public water system. New wells were provided at some distance from the plant of the plaintiff. The pumps installed were designed to be operated by electric current. The plaintiff thereupon furnished the current, and for a period of over eight years furnished such current at the rate stipulated in the franchise, rendered bills there-

for, and received payment thereof. In 1918 plaintiff removed its plant to another location and installed a meter for the purpose of measuring the current supplied for pumping. It continued to furnish electric current to the city. It rendered bills from August, 1918, to November, 1919, monthly, showing the electricity so furnished and the rates therefor in accordance with its scheduled charge. The city refused to make payment excepting at the franchise rate. On March 5, 1919 the Public Utilities Act (Laws 1919, chap. 192) became effective and by operation of law, as plaintiff maintains, the rates fixed by plaintiff's schedule became the legal rates for this public utility within the defendant city. The amount so claimed for current furnished for pumping is the amount alleged in the second cause of action.

In 1908 the city constructed and occupied a city hall, a large brick building, consisting of three floors. On the second floor, a large room, some 30 by 40 feet in dimension, was fitted up as a public library and reading room. There, from December, 1908, until about December, 1918, such library and reading room was maintained and electric current for lighting this room, as well as the building, was furnished by the plaintiff. In the year 1914 the plaintiff furnished the city a statement for the current furnished as shown by a separate meter. The city refused payment on the ground that it was the duty of the plaintiff to furnish this current in accordance with the provisions of the ordinance. Again a claim was presented and rejected before the commencement of this action. The amount thereof constitutes the third cause of action.

## Decision.

*1. Electricity furnished for street lights.* The plaintiff contends that the contract made in March, 1912, became almost immediately operative by reason of the use of lamps installed on "street hoods." That the resolution of the city council in June, 1914, canceling and annulling this contract, being unanimously adopted and entered upon the council proceedings was presumptively published in due course in the official newspaper and presumptively afforded formal notice thereof to the plaintiff; that the reasonable presumption is that the city assumed that the contract of March, 1912, had expired on March 1, 1913, and from that time had continued in force as a contract from month to

month; that in February, 1918, the plaintiff gave due notice to the city of a new surcharge rate of 10 per cent to be thereafter charged; that its manager had authority to fix such rates and the same are presumed to be reasonable; that the city accepted, from month to month for a period of six months, the current without any objection to the increased rate; that, in any event, as a matter of law, the contract of March, 1912, had expired, and there existed thereafter only a contract from month to month which was determinable by, and terminable at, the rental period of payment; that, furthermore, whether the contract was terminated by its own terms or by the act of the city on June 1, 1914, the parties were in the same position that they would have been if no contract had been made; that plaintiff supplied the current, the city accepted and paid for the commodity by the month with no definite agreement as to the terms; that after the notice of an increase was given by the plaintiff in February, 1918, the city, by accepting the commodity, became liable for the increased charge.

The city contends that the contract of March, 1912, became effective in October, 1912; that by the acts of the parties, the plaintiff furnishing current, the city receiving and paying for the same, at the contract rate, this agreement was renewed from year to year until and including the year of 1918; that the notice given by the plaintiff in February, 1918, of a surcharge increased rate did not operate to terminate the contract then existing, without the consent of the city; that the resolution of the city council in June, 1914, did not terminate the contract; that its abrogation was not accepted by the plaintiff; that the city did not consent to the surcharge; and that the plaintiff furnished current to the city so knowing.

The trial court found that the plaintiff commenced furnishing current under the March, 1912, contract on October 1, 1912; that the contract, by acts of the parties, was renewed from year to year and continued in force; that no notice of the cancelation of this contract was given by either of the parties until February, 1918, when the plaintiff notified the city of its surcharge rate; that thereafter the plaintiff rendered monthly bills for its services, based on the rate in the contract of 1912, with a 10 per cent surcharge added; that the city allowed such bills at the contract rate, rejected the surcharge, and the amounts thereof as allowed were paid to and accepted by the plaintiff. As a conclusion

of law, the trial court found that the plaintiff was obligated to furnish, and the defendant was entitled to receive, electric current under the rate provided in the agreement of 1912 from February 1, 1918, to July 31, 1918, for all of which payment had been made to the plaintiff.

Under this specific question we are of the opinion that the findings and conclusions above stated are proper. Although the contract of March, 1912, was for the term of one year, it could be renewed by implication of law, through the acts of the parties for another year. It was so renewed for the year 1913. Although the city council in June, 1914, did adopt a resolution terminating and canceling this contract, nevertheless it fully appears that the plaintiff neither consented to nor acted upon such resolution of termination and that the city itself did not thereafter treat such contract as if canceled. The acts of the parties from June 1, 1914, through and until February 1, 1918, recognized this contract of March, 1912, to be in force. Electricity was furnished by the plaintiff pursuant to its terms and the rates therein prescribed. Its service was accepted by the city and payment made therefor pursuant to the contract. The action of the city in adopting this resolution does not afford, in our opinion, any ground for a presumption that this contract was thereafter to be considered and determined to be merely a contract from month to month. No consent is shown in the record to such termination. The contract then to be terminated as it then existed required the consent of both parties. Comp. Laws 1913, § 5934. As it then existed it was a renewal contract for a year. The sole action of the city itself without the consent of the plaintiff did not serve to alter its character. See Taylor v. Lambertville, 43 N. J. Eq. 107, 10 Atl. 809. See Appleton Waterworks Co. v. Appleton, 132 Wis. 563, 113 N. W. 44. The parties continued to operate under this contract pursuant to its original terms in respect to the rates, the term, and the monthly period of payment. We are further of the opinion, in any event, that it is immaterial whether this contract became operative in March, 1912, or in October, 1912, or whether it be considered to have been renewed after its termination from year to year or from month to month.

On February 1, 1918, when the plaintiff gave notice of a surcharge rate, a contract then existed between the parties. Upon plaintiff's contention and showing, the contract, then existing, either was terminated

or was modified by plaintiff's demand so as to provide for a surcharge rate. It is manifest that the contract was not modified because the city did not accept nor agree to pay the surcharge rate. It is further manifest that the contract was not abrogated for the reason that the plaintiff, notwithstanding its demand for an increase, still continued to furnish electricity to the city, and to receive monthly pay therefor, pursuant to the terms of the contract. This clearly showed by the acts of the parties a continued performance under the terms of the contract. Upon this showing there exists no ground for the creation of an implied contract between the parties independent and in abrogation of the contract.

2. *Electricity furnished for pumping.* The plaintiff contends that, under the ordinance granting to it a franchise in 1902, it was willing to furnish steam power for pumping water from wells immediately adjoining its power plant at the rate prescribed in the ordinance; that the city, by reason of its changing in 1910 the location of the steam pumps and dispensing with steam power for pumping, made it impossible for the plaintiff to render the services contemplated by the franchise; that the acts of the city renounced and abrogated the contract for pumping made in the franchise of 1902; that the city, through its request that the plaintiff extend its wires to the pumping station and furnish electric current to operate the city pumps by electricity, impliedly entered into a new contract to pay the reasonable value of the current so furnished; that the act of the city in rendering impossible performance by the plaintiff of the contract of 1912 for pumping water precludes it now from asserting that the plaintiff is bound to furnish power for pumping such city water pursuant to the terms of the franchise.

The plaintiff further contends, concerning the electric current furnished for pumping since March 5, 1919, that, by legislative act, effective March 5, 1919, known as the Public Utilities Act (Laws 1919, chap. 192), the state, through powers conferred upon the board of railroad commissioners, assumed full regulations and control concerning rates and charges of all public utilities; that accordingly the plaintiff since that time was required to furnish electric current at rates which were just and reasonable to all persons or corporations and was prohibited from making any discrimination in rate charges; that at such time when the act became effective the scheduled rates of the plaintiff were then the legal rates in force; that therefore the charge of 6 cents per

K.W. to the city was a proper and legal charge for current so furnished after March 5, 1919; that the board of railroad commissioners by an opinion rendered July 7, 1920, approved these rates of the plaintiff. In this regard the plaintiff further contends that this Public Utilities Act took from the city the police power concerning the regulation of rates and served to supersede the contract rate provisions in this franchise of 1902; that the effect of the act was to instantly strike down and make unlawful any free supply of a public utility, or any supply charge at a low or discriminatory rate; that after March 5, 1919, the plaintiff would violate the state law by rendering service to the city or any service that was below a fair, just, and reasonable rate charge to any person or corporation for whom a like service was rendered.

On the other hand, the defendant contends that the franchise granted to the plaintiff in 1902 constituted a valid contract, except in so far as the same was invalidated for any purpose for the period subsequent to March 5, 1919, by the Public Utility Act; that, in making this franchise, the parties contemplated, and their acts subsequently demonstrated, that the franchise rate for pumping should apply to changed conditions that might occur, in the growth of the city, to the city water system, and to the location of the city's pumps, means of pumping, and the plaintiff's proximity thereto; that this is shown through the furnishing of electric current for power and receiving the franchise rate therefor, by the plaintiff, for a period of some eight years after the city changed the location of its wells in 1910, and, further, too, after the plaintiff had changed the location of its own electric light plant; that, by its acts, the plaintiff placed a practical construction upon this contract; that in August, 1918, for the first time, it made the demand that its arbitrary rate of 6 cents per K.W. be paid for the electric current furnished for pumping; that the city has tendered its warrants in full payment pursuant to the franchise rate.

Further, concerning the Public Utilities Act, the city contends that the act, even if applicable, does not apply to the period in controversy from August, 1918, to November, 1919, for the reason, that, until the state has taken action or directed to the contrary, in the exercise of its police power, the franchise provisions continue to exist valid between the parties; that, furthermore, in any event, the city had the authority and the right to receive this electric current at the rate prescribed in

the franchise, because it was a contract between the parties, and not the exercise of a rate regulatory power; that this prescribed rate was neither unreasonable nor discriminatory because it formed a part of the consideration for the privileges granted under the franchise, with which the Public Utilities Act did not in any manner seek to interfere.

In its findings the trial court found that for over eight years previous to August 1, 1918, the plaintiff furnished electric current for the city's pumps, located some six city blocks from plaintiff's plant, for which service it has rendered monthly bills at the franchise rate which were regularly allowed and paid by the city; that during such time it made no objection to pumping such water in such manner and at such price nor that it was not obligated so to do by the terms of the franchise; that, furthermore, until 1910, it had furnished power by means of a steam pump to pump water for the city from a well located very near plaintiff's electric plant; that since August 1, 1918, plaintiff rendered bills monthly to the city council for the payment of rates charged by it to its private consumers for electric current; that such bills were allowed by the city at the franchise rate and rejected as to the excess; that the plaintiff had full notice of the claim of the city to such services by the plaintiff at the prescribed franchise rate. As a conclusion of law the trial court determined that the plaintiff was legally obligated by the franchise and the contract made thereby to furnish electric current to the city's pumps at the franchise rate.

The contention of the parties in the findings of the trial court have been stated somewhat fully in order to present clearly a consideration of the issues. We are clearly of the opinion that the findings of the trial court are proper and sustained by the evidence; that its conclusions are correct. Upon the legal propositions presented, both counsel, with much ability, have discussed with numerous citations of authority the liability of the city for the current furnished under the altered conditions and in connection with the recently enacted Public Utilities Act. Strenuously has the plaintiff contended that the city, by changing the location of its pumps and the method of furnishing power thereto, had renounced the contract provisions of the franchise applicable thereto and had placed the plaintiff in a position where it could not perform in accordance with the provisions of the contract. We are clearly of the opinion that this contention upon this record cannot be sustained in

that regard. The findings of the trial court, found proper by this court, demonstrate that the parties by their acts and conduct have adopted a practical construction of the contract. 13 C. J. 546; State Trust Co. v. Duluth, 104 Fed. 633. The plaintiff is not in a position, therefore, to claim a different compensation for the service rendered from August, 1918, to November, 1919, unless the Public Utilities Act has changed or superseded this contract relation. This Public Utilities Act (Laws 1919, chap. 192) grants to the board of railroad commissioners regulatory rate-making powers over public utilities, such as the plaintiff. It does not deprive a city of its powers and privileges in creating or enforcing a franchise granted for the use of its streets or highways by a public utility. It does not pretend to grant the railroad commissioners the power to determine what shall be the consideration to be paid for the use or exercise in a city of the privilege of a franchise. The defendant city had the authority to grant or permit a franchise to the plaintiff for the use of its streets and highways and to regulate the use of the same. It still has that authority. Comp. Laws 1913, § 3599, (13–24). It is specifically reserved to a city, by the constitutional provision, which provides that no law shall be passed by the legislative assembly granting the right to construct and operate an electric light plant within any city without requiring its consent. N. D. Const. § 139. This right of franchise granted to the plaintiff in 1902 was a right of value, a right of property, and, validly, the subject of a legal contract. See note in 50 L.R.A. 142; Joyce, Franchises, §§ 25, 26; see Bismarck Gas Co. v. District Ct. 41 N. D. 385, 170 N. W. 878; Moorhead v. Union Light, Heat & P. Co. 255 Fed. 920; Public Service Electric Co. v. Public Utility Comrs. 88 N. J. L. 603, P.U.R.1916D, 107, 96 Atl. 1015; People v. O'Brien, 111 N. Y. 40, 2 L.R.A. 255, 260, 7 Am. St. Rep. 684, 18 N. E. 692; Ghee v. Northern Union Gas Co. 158 N. Y. 510, 53 N. E. 693; Pond, Public Utilities, § 114, 4 McQuillin, Mun. Corp. §§ 1617–1636.

The franchise so granted constituted a contract between the state, through the municipality representing the state by its permission, and the company. Ghee v. Northern Union Gas Co. 158 N. Y. 510, 53 N. E. 693; New Orleans Gaslight Co. v. Louisiana Light & H. P. & Mfg. Co. 115 U. S. 650, 658, 29 L. ed. 516, 520, 6 Sup. Ct. Rep. 252; Russell v. Sebastian, 233 U. S. 204, 58 L. ed. 921, L.R.A.1918E, 882, 34

Sup. Ct. Rep. 517, Ann. Cas. 1914C, 1282; Pond, Public Utilities, §§ 78, 89, 92; 4 McQuillin Mun. Corp. § 1624. The city had the right to exact a charge for the use of its streets. St. Louis v. Western U. Teleg. Co. 184 U. S. 94, 97, 37 L. ed. 380, 383, 13 Sup. Ct. Rep. 485; or, as a consideration for the franchise. Independent School Dist. v. Le Mars City Water & Light Co. 131 Iowa, 19, 10 L.R.A.(N.S.) 859, 863, 107 N. W. 944.

The consideration for the exercise of this right might have been evidenced by the payment of a stipulated sum of money annually, or otherwise by the payment of a percentage of the gross or net revenues of the company earned in the city, or by doing certain service in and upon the streets or highways of the city and by furnishing as an equivalent, in lieu of money, a certain service of a certain commodity for the city's use. 5 McQuillin, Mun. Corp. § 1645; Mitchell v. Dakota Cent. Teleph. Co. 25 S. D. 409, 127 N. W. 582. This furnishing of a certain service or a certain commodity for the city's public use may not be termed a bargaining of the municipal or state police power concerning rates, in the absence of a restrictive or prohibitive constitutional or legislative provisions, but rather the "*quid pro quo*" of, or the consideration for, the exercise of the franchise.

Readily, upon the law of this state, may such cases as Kenosha v. Kenosha Home Teleph. Co. 149 Wis. 338, 135 N. W. 848, be distinguished by reason of the fact that in this state, the right to permit the exercise of a franchise in a city is directly reserved and preserved to a city by a constitutional provision. In the case cited it was held that the franchise was created by statutory authority subject to reasonable regulations under the police power; that the city in enacting an ordinance granting a franchise did not thereby create a contract because it had no consideration to give for such a contract; that therefore a provision thereunder for furnishing free telephones to a city was rendered ineffectual by a subsequent enacted public utilities statute making illegal such furnishing of telephones.

Likewise, upon the law and facts of this case, may a distinction be drawn concerning such cases as V. & S. Bottle Co. v. Mountain Gas Co. 261 Pa. 523, 104 Atl. 667; State Public Utilities Commission ex rel. Quincy R. Co. v. Quincy, 290 Ill. 360, P.U.R.1920B, 313, 125 N. E. 374; Ottumwa R. & Light Co. v. Ottumwa, — Iowa, —, 173 N. W.

270; Mill Creek Coal & Coke Co. v. Public Service Commission, 84 W. Va. 662, 7 A.L.R. 1081, 100 S. E. 557, cited by the plaintiff. See also notes in L.R.A.1915C, 264, and L.R.A.1918D, 315. These cases concern general or regulatory rate provisions in a franchise or contract to be charged the public. The case at bar concerns directly the validity of a contract provision for the payment of a consideration to the city for exercising the privileges of the franchise in the use of its streets. In the franchise of 1902 the plaintiff did agree to make payment for the exercise of this right or privilege by rendering a certain service for the city's use in which it included as found by the trial court, the electric current involved herein.

Presumably under the contract the service so rendered by the plaintiff is reasonably compensatory for the privilege so exercised by the plaintiff. And likewise the value of this franchise might reasonably and presumptively measure the difference between the amount of actual charge in fact made to and paid by the city and the amount of the reasonable charge for the service rendered. State v. Peninsular Teleph. Co. 73 Fla. 913, 10 A.L.R. 501, P.U.R.1917E, 453, 75 So. 201. The rate charged therefor under the contract cannot be termed in any event unreasonable or discriminatory.

It must appear, accordingly, that the right of the city in consenting to a franchise to contract for the consideration to be paid by a public utility for the exercise of the franchise is not to be confused with either the state or municipal police power to regulate public service rates or such public utility. Pond, Public Utilities, §§ 434, 436; 4 McQuillin, Mun. Corp. §§ 1733, 1736. It therefore follows that the franchise of 1902 concerning the electric service rendered to the city is operative, and to it the Public Utilities Act cited has no application.

*3. Electric current furnished library and reading room.* The plaintiff contends that continuously from December 28, 1902, to the commencement of this action the plaintiff furnished electric current to the public library and reading room in a building erected by the city to be used as a city hall; that the plaintiff was requested by the city to extend its wires to this room; that the city appropriated money by ordinance for lighting the streets and public places and for maintenance of the city hall including fuel, janitorial service, and incidental expenses during the period of time covered; that during such period this room was

used exclusively as a library and reading room and the public offices in the city hall were entirely separate and apart therefrom; that the city officers and members of the city council knew, during a period of ten years, that this room was used for purposes other than for city offices and was lighted by means of electricity furnished by plaintiff; that this electricity so furnished was not within the contract and the city is liable therefor as upon an implied contract.

The city contends that the electricity so furnished for this room was within the provisions of the contract between the parties; that the plaintiff should furnish electric current to light the city hall, and engine house of the city, and the offices therein without cost to the city. That the library board, a public board, was an agency or department of the city government. That, in any event, the furnishing of the electric current to this room by the plaintiff, without objection or demand for payment during the years operated as a practical construction of the contract between the parties; that no contract in fact was ever made between the parties other than the franchise contract to pay for such current and that no liability was ever incurred by the city upon an "aye" and "nay" vote of the city council as required by law.

In its findings the trial court determined that this library and reading room was located in the city hall of the city, erected in 1902; that the city permitted the public library there to be maintained governed by the board of education of the independent school district of the city and that during the time involved the room was under the charge and control of such library board. That no specific request was made by the city to furnish electric current for such room and that no bill therefor was ever presented, except one presented in the year 1914 for the electricity furnished up to that time; that this bill was rejected by the city; that, without further negotiation, the plaintiff continued to furnish electricity for this room up to the time of the action with knowledge on the part of the plaintiff that the city claimed it to be obligated under its contract to light such room free of charge as part of the city hall and offices therein. In its conclusions the trial court found that there existed no contract, either express or implied, or either in law or in fact, to pay the plaintiff any sum whatever for electric current furnished for lighting such library and reading room.

We are again of the opinion that the findings of the trial court are

proper and its conclusions correct. At considerable length the parties have discussed the question of the liability of the city upon an implied contract. This question is deemed immaterial in this case, and unnecessary to discuss for the reason that in our opinion, and as found by the trial court, the parties by their acts and conduct have adopted a practical construction of the franchise. It is not to be doubted that for years the plaintiff furnished this electricity for this room in the city hall without objection, and without any demand for compensation. For years apparently it recognized that this furnishing was included within the terms of its franchise with the city. Both parties so construed it; upon such construction both parties acted. In no manner does the record disclose any recognition of a liability on the part of the city for furnishing this contract otherwise than as prescribed by the provisions of the franchise. The judgment is in all things affirmed with costs to the respondent.

ROBINSON, GRACE, and BIRDZELL, JJ., concur.

CHRISTIANSON, Ch. J. (concurring). I agree with my associates that the facts in this case do not entitle the plaintiff to recover upon any of his three causes of action. While the Public Utilities Act makes it "unlawful for any public utility corporation subject to the provisions of the act to make or give any undue or unreasonable preference or advantage to any particular person, firm, corporation, or locality, the same section (§ 16, of the Public Utilities Act) which contains this provision also provides: "Nothing in this act shall prohibit a public utility from entering into any reasonable agreement with its customers, consumers, or employees, or for [from] providing for a sliding scale of charges, unless the same is prohibited by the terms of the franchise or permit under which such utility is operated. No such agreement or sliding scale shall be lawful unless and until the same shall have been filed with and approved by the commissioners." Section 4 of the Public Utilities Act provides: "The commissioners shall have the power, after notice and hearing, to enforce, originate, establish, modify or adjust and promulgate tariffs, rates, joint rates, tolls and charges of all public utility corporations and whenever the commissioners shall, after hearing, find any existing rates, tolls, tariffs, joint rates or schedules unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in viola-

tion of the provisions of the Act, the Commissioners shall, by an order, fix reasonable rates, joint rates, tariffs, tolls, charges or schedules to be followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any provision of law."

As found by the trial court, and by this court, the plaintiff and the defendant city had agreed upon certain rates; these rates were in existence when the Public Utilities Act became operative. There is no contention that the commissioners had adjudged the rates so agreed upon between the public utility and the city to be discriminatory; or that the commissioners have taken any action whatsoever regarding such rates. Hence, it seems to me that so far as this litigation is concerned the rights of the parties depend upon and are measured by their contracts. And I agree with my associates that the evidence justifies the conclusions drawn by the trial court as regards the contractual rights and obligations of the parties. I express no opinion as to whether the Public Utilities Act invests the commissioners with authority to change a rate which has been agreed upon between the public utility corporation and a city as regards compensation to be paid by the city itself (as contradistinguished from maximum rates fixed in the franchise to be charged customers generally) for service rendered to it; and which rate is stipulated in the franchises under which the public utility is operated. Nor do I express any opinion as to whether under § 139 of the state Constitution the legislature could confer upon a public utility commission the power to change or alter such rates.