**PUBLIC SERVICE COMMISSION of the State of North Dakota, Appellant,**

**v.**

**CITY OF WILLISTON and Montana Dakota Utilities Company, Respondents.**

**No. 8479.**

Supreme Court of North Dakota.

Aug. 9, 1968.

John C. Stewart, Sp. Asst. Atty. Gen., and Commerce Counsel for the Public Service Commission, Bismarck, for appellant.

Walter O. Burk, Williston, for respondent City of Williston.

Pearce, Engebretson, Anderson & Schmidt, Bismarck, and William S. Murray, Minneapolis, Minn., for respondent Montana Dakota Utilities Co.

Bosard, McCutcheon & Kerian, Minot, for City of Minot, amicus curiae.

R. W. Wheeler, Bismarck, and Gene·R. Sommers, Minneapolis, Minn., for Northern States Power Co., amicus curiae.

ERICKSTAD, Judge (on reassignment).

The North Dakota Public Service Commission appeals from a judgment of the District Court of Williams County dated October 13, 1967, which reversed an order of the Commission dated December 7, 1965.

The action was initiated when the Public Service Commission ordered Montana Dakota Utilities and the City of Williston to show cause (1) why the Public Service Commission should not find the rate for the furnishing of electrical energy for and to municipal buildings and related facilities within the City of Williston as established by contract between the parties to be unjust, unreasonable, unjustly discriminatory, or otherwise in violation of N.D.C.C. § 49–02–03; and (2) why the Commission should not by order fix a reasonable rate to be followed by the parties in the future.

Throughout the rest of this opinion the parties will be called the Commission, the City, and MDU.

Upon the hearing of the order to show cause, the Commission concluded that the 1.2 cents per kilowatt-hour charged the city for electrical energy supplied it for municipal purposes was in violation of N.D.C.C. § 49–02–03; that rate No. 20–N–2, a higher rate previously filed and approved by the Commission, was reasonable; and that as of January 1, 1966, that rate should be charged the City.

When the Commission's order was made, both the City and MDU appealed to the district court. The essence of their appeals was that the Commission did not have jurisdiction under the constitution and the statutes of the state to determine the rates to be charged by MDU to the City, a municipal corporation, because of an existing contract between them which established the 1.2 cents per kilowatt-hour rate. It was their contention that part of the consideration of the contract was the granting of a 20-year franchise by the City for the use of its streets, alleys, and other public ways; and that under N.D.Const. § 139 such a contract was exclusively within the authority of the City.

Relying on Chrysler Light & Power Co. v. City of Belfield, infra, and holding that the amendments to our statutes contained in H.B. 82 of the Twenty-first Session of the North Dakota Legislative Assembly (N.D.Laws 1929, ch. 173) and S.B. 73 of the Thirty-second Session (N.D.Laws 1951, ch. 260) in no way enlarged the authority of the Commission, the district court held that the Commission had no jurisdiction to determine the rate to be charged the City for the electricity used to light its municipal buildings and other related facilities.

On appeal we are asked either to reverse the position this court took in Western Electric Co. v. City of Jamestown, infra,

which was followed in *Chrysler,* or to hold that those decisions were abrogated by the provisions that became law when H.B. 82 of the Twenty-first Session and S.B. 73 of the Thirty-second Session of the Legislative Assembly were adopted.

In *Western* the City of Jamestown had enacted in 1902 an ordinance granting to the Jamestown Electric Light Company for a period of 25 years a franchise to use its streets for "poles, wires, transmission of electricity, etc., in the operation of an electric light and power plant." Western Electric Company was a successor in interest of Jamestown Electric Light Company, and it exercised its privileges as a public service corporation in the city pursuant to the terms of that ordinance. The ordinance provided, among other things, that during its life the company should furnish electrical current to light the city hall, engine house, and city offices without cost to the city.

On March 5, 1919, the Public Utilities Act (N.D.Laws 1919, ch. 192) became effective. It was the contention of Western Electric Company that thereafter the provisions of the Public Utilities Act prevailed, and that therefore the company was no longer obligated to provide the free service contemplated by the ordinance and franchise.

In holding that the company was obligated to continue free service to the city pursuant to the ordinance and the franchise, notwithstanding the enactment of the Public Utilities Act, this court said:

This Public Utilities Act (chapter 192, Laws 1919) grants to the Board of Railroad Commissioners regulatory rate-making powers over public utilities such as the plaintiff. It does not deprive a city of its powers and privileges in creating or enforcing a franchise granted for the use of its streets or highways by a public utility. It does not pretend to grant the Railroad Commissioners the power to determine what shall be the consideration to be paid for the use or exercise in a

city of the privilege of a franchise. The defendant city had the authority to grant or permit a franchise to the plaintiff for the use of its streets and highways and to regulate the use of the same. It still has that authority. Section 3599 (13-24), C.L.1913. It is specifically reserved to a city by the constitutional provision which provides that no law shall be passed by the Legislative Assembly granting the right to construct and operate an electric light plant within any city without requiring its consent. Section 139, N.D.Const. * * *

Western Electric Co. v. City of Jamestown, 47 N.D. 157, 181 N.W. 363, 367 (1921).

Although the Board of Railroad Commissioners, the predecessor of the Public Service Commission, was not a party to that action and had therefore not made a determination of the reasonableness or unreasonableness of the free service, the court said:

Presumably under the contract the service so rendered by the plaintiff is reasonably compensatory for the privilege so exercised by the plaintiff. And likewise the value of this franchise might reasonably and presumptively measure the difference between the amount of actual charge in fact made to and paid by the city and the amount of the reasonable charge for the service rendered. State v. Peninsular Telephone Co., 73 Fla. 913, 75 So. 201, 10 A.L.R. 501. The rate charged therefor under the contract cannot be termed in any event unreasonable or discriminatory.

It must appear, accordingly, that the right of the city in consenting to a franchise to contract for the consideration to be paid by a public utility for the exercise of the franchise is not to be confused with either the state or municipal police power to regulate public service rates or such public utility. Pond, Public Utilities, §§ 434, 436; McQuillin, Municipal Corporations, vol. 4, §§ 1733,

1736. It therefore follows that the franchise of 1902 concerning the electric service rendered to the city is operative, and to it the Public Utilities Act cited has no application.

Western Electric Co. v. City of Jamestown, supra, 368.

In *Chrysler*, an opinion written by Judge Christianson, who specially concurred in *Western*, this court said:

> We fail to find in the Public Utilities Act any language indicative of a legislative intention to confer any authority upon the board of railroad commissioners to interfere with the rates for electric current to be furnished by an electric light company to a city, where such rates are fixed by contract in the franchise granted by the city to the electric light company. * * *

Chrysler Light & Power Co. v. City of Belfield, 58 N.D. 33, 224 N.W. 871, 875, 63 A.L.R. 1337 (1929).

It seems to be the contention of Northern States Power Company, which filed an amicus curiae brief in this case, that the Board of Railroad Commissioners made a determination which in effect reversed this court's holding in *Western*. Only two years after this court's decision in *Western* was rendered, in considering the free-service aspect of the franchise which the City of Jamestown gave the predecessor of Western Electric Company, the Railroad Commissioners said:

> It is the contention of the then attorney for the utility that this free service and special rates for pumping was, and is, the consideration for the use of the streets and alleys. Our own supreme court has placed this construction upon the franchise. Western Electric Co. v. [City of] Jamestown, [47] N.D. [157], 181 N.W. 363.

> This Commission is of the opinion that the free service and rates for pumping are unjustly discriminatory; that the

practice places an undue burden upon the individual consumers. The consumer is required to pay for it for the benefit of the entire municipality, and it thereby discriminates against the consumer in favor of the nonconsumer. The investigation discloses the fact that it cost the utility in 1922 $.06098 per kilowatt hour to produce electricity. Based upon the amount of electricity furnished to the city of Jamestown by special rate and for free service for the year 1922, the utility actually lost approximately $6,000 on this contract. This amount was in turn indirectly charged to the consumers.

> This Commission believes that this discrimination should be removed. We are, however, reluctant to order the rates increased on short notice, in view of the limitations placed upon the city by statute in the matter of taxation, the city Commission having arranged its budget for the ensuing year on the basis of the past and no provision having been made for increased expense. We will, therefore, direct the attention of the city Commission to the apparent discrimination and serve notice that at the expiration of this order, a further hearing will be held, at which time the city of Jamestown may appear and show cause why the discrimination should not be removed.

Re Western Electric Co., 1923C P.U.R. 820, 828–29.

It is said that there was no appeal from that decision of the Board, that other similar decisions were rendered by the Board, and that therefore the practical construction of the Public Utilities Act was that the Board (and its successor, the Commission) had jurisdiction to determine the reasonableness of rates charged the municipalities, whether or not they were part of a franchise.

It is Northern States Power Company's view that when the legislature enacted H. B. 82 in 1929, it was approving the Board of Railroad Commissioners' "reversal" of

the Supreme Court's decision in Western Electric Co. v. City of Jamestown, 47 N.D. 157, 181 N.W. 363 (1921), in the Board's ruling in Re Western Electric Co., 1923C P.U.R. 820.

The pertinent part of S.B. 82 reads as follows:

§ 2. The board of trustees of any village shall have the power and authority to enter into a contract or agreement with any person, partnership, association or corporation to furnish electric energy or gas to the village, for all village purposes, and to the inhabitants of said village, and to enter into a contract or agreement with any person, partnership, association or corporation, for a term of not to exceed ten years, for the sale by any such person, partnership, association or corporation, and the purchase by the village, of electric energy or gas; *providing that nothing herein contained shall be construed to deprive the board of railroad commissioners of any of its existing regulatory powers with reference to such contract rates.* (emphasis added)

N.D. Laws 1929, ch. 173, § 2, at 222.

The question arises, Under what authority could the Commission have reversed a decision of the Supreme Court? There is no such authority. In light of the separation-of-power principle contained in our constitution, it is reasonable to assume that the legislature, in enacting H.B. 82 and in referring to "existing regulatory powers," had in mind the powers that the Board of Railroad Commissioners had as determined by the decision of the Supreme Court. It is our view that had the legislature intended to give the Board authority over this matter, contrary to the Supreme Court's construction of the Public Utilities Act, it would have specifically so provided.

Having so decided the effect of H.B. 82 of the Twenty-first Legislative Assembly, it naturally follows that the only effect S.

B. 73 of the Thirty-second Legislative Assembly had was to add cities to the provision permitting villages to enter into contracts for the furnishing of electricity or gas to the municipality and its inhabitants.

This view is supported by the Report of the North Dakota Legislative Research Committee for the Thirty-second Legislative Assembly, which we think is significant, as the bill was introduced by the Committee. The part of that report which relates to this issue reads:

Senate Bill 73. City and Village Contracts for Electrical Energy or Gas. Introduced by the Legislative Research Committee. Amends section 40–0505 by adding cities to the provision permitting villages to enter into contracts for the furnishing of electricity or gas to the inhabitants of the municipality. The effect will be to put cities and villages on equal terms in respect to the making of such contracts.

The pertinent part of S.B. 73 reads:

The governing body of any city or village may enter into a contract with any person, partnership, association, corporation or the United States or any department or agency thereof to provide for:

1. The furnishing of electrical energy or gas to the inhabitants of the city or village and to the city or village for all purposes; or

2. The sale to and the purchase by the city or village, for a term of not to exceed ten years, of electrical energy or gas required for city or village purposes.

The making and execution of any such contract must be authorized by a resolution of the governing body adopted by a majority of the members thereof at a regularly assembled meeting of such body. Nothing contained in this section shall deprive the public service commission of any of its regulatory powers with reference to contract rates.

N.D. Laws 1951, ch. 260, at 369.

What we have said herein is in accord with what we recently said concerning the effect of the legislature's acquiescence in the court's construction of a statute:

The legislature, in failing to amend the statute in light of the court's construction, has acquiesced in that construction, and thus has indicated that the construction is in accord with legislative intent.

* * * The construction of a statute by the courts, supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent. [Citing Commissioner of Banking and Insurance v. Moresh [122 N.J.L. 77, 3 A.2d 638].] * * *

Barringer v. Miele, 6 N.J. 139, 77 A.2d 895, 897.

Kline v. Landeis, 147 N.W.2d 897, 902 (N.D.1966).

The amendments which were made indicate no intention on the part of the legislature to depart from this court's construction of the Public Utilities Act.

Northern States Power Company also argues:

If charges for franchises go into the general rate base and are paid by all consumers, within or without franchised areas, and in both high and low franchise contract municipalities, this will foster greater demands by each locality in order to get a greater piece of the pie. The provisions of N.D.C.C. 49–06–03 appear to prohibit computation of the consideration for the franchise on the basis of the standard rate, less contract rate and inclusive thereof, in the rate base. See *Re Western Electric Co.*, (1922) 1923C P.U.R. 820.

The logical solution is the approach taken by the Commission here in recognition of the legislature's intent. * * *

If this argument is sound, we believe it should properly be made to the legislature rather than to the Supreme Court.

The Commission's arguments on appeal are summarized in the conclusion of its brief. The pertinent parts follow:

· The Commission is directed by law to regulate the rates of all public utilities. Section 49–02–03, N.D.C.C. The only exception to that power is set forth in Section 49–02–01.1, N.D.C.C. The Commission's power with reference to rates extends to contract rates. Section 49–04–07, N.D.C.C. Municipalities are authorized to enter into contracts with utilities for service subject to the Commission's jurisdiction over contract rates. Section 40–05–05, N.D.C.C. All rates are to be just and reasonable (Section 49–04–02, N.D.C.C.), and no utility, directly or indirectly, by any special rate, rebate, drawback, or other device or method, shall charge, demand, collect, or receive from any person, firm, or corporation, a greater or less compensation for any service rendered than it charges, etc., any other for doing a like and contemporaneous service under the same or substantially similar circumstances and conditions. Section 49–04–07, N.D.C.C. And no utility is to give any corporation or locality any undue or unreasonable preference or advantage. Ibid.

The Western Electric and Chrysler cases, supra, for several reasons do not constitute valid authority for the proposition that the Commission is without jurisdiction over rates for electric service provided municipal buildings and related facilities. Both of those cases were decided without any apparent consideration of the Commission's power with regard to contract rates, or of the fact that at the time those cases arose municipalities were expressly authorized by law to pre-

**540**

scribe rates, or of the fact that such express authorization was later qualified to the effect that such power did not exist if the utility was subject to the Commission's jurisdiction. Further, the state of the industry's art at the time of those decisions was such that the consequences of the decisions were not felt outside of the municipalities involved. In other words, if Belfield obtained a bargain rate for electric service for street lighting and for its public buildings, that bargain was paid for by the utility's patrons in Belfield rather than by the residents of Dickinson, Bowman, etc. A similar ruling in the case at bar would mean that all of Respondent MDU's patrons in North Dakota would pay for Williston's bargain rates.

What we have thus far said in this opinion and what was said in the previous opinions of this court meet the contentions of the Commission except for the one concerning the state of the industry's art at the time of the earlier decisions of this court. That argument is one which, in light of the previous decisions of this court which have been the law of this state since 1921, should be made to the legislature. We are not convinced of any urgency which would compel or justify us in ignoring the rule of stare decisis in this case. Further, it should be noted that if the Commission were to convince the legislature of the merit of its argument, there would still remain § 139 of the North Dakota Constitution, the effect of which we do not herein attempt to state.

For the reasons stated, the judgment of the trial court is affirmed.

TEIGEN, C. J., and PAULSON, KNUDSON and STRUTZ, JJ., concur.