(88 N. W. Rep. 706.)

---

## GEORGE C. WILES *vs.* McINTOSH COUNTY.

Opinion filed Dec. 31, 1901.

**County School Superintendents—Compensation.**

Section 652, Rev. Codes, which prescribes the salaries of county superintendents of schools, construed, and *held*, that said section requires that salaries shall be computed upon the basis of the number of schools or separate departments of graded schools presided over by superintendents, which have been taught at least three months in the preceding year, and shall not be computed upon the number of schools which have been taught less than three months. This construction of said section is not of that doubtful character which would warrant the courts in following a contrary interpretation placed thereon by the department of public instruction.

**Voluntary Payments Do Not Estop County.**

The plaintiff brought this action to recover a balance alleged to be due him for salary as county superintendent. The county interposed a counterclaim for an alleged overpayment of salary, which payment was induced by plaintiff's overstatement to the board of county

commissioners of the number of schools in the county. It is *held* that, inasmuch as such overpayments were made under a mistake of fact, and were induced by plaintiff's false statements, they were not voluntary payments, and can therefore be recovered back by the county. It is *held*, further, that the doctrine of voluntary payment does not apply to payment made from public funds by agents of municipal corporations whose duties and powers in reference thereto are limited and defined by law. It was error, therefore, for the trial court to direct a verdict against the defendant upon its counterclaim upon the ground that the overpayments were voluntary.

**Motion to Strike Statement Denied.**

A motion by respondent's counsel to strike appellant's abstract and the statement of the case from the record, and to affirm the judgment upon the ground that the statement was settled in violation of the statute in this: that the statutory time for proposing amendments was not given, is denied for the reason that the record does not sustain the ground upon which the motion is based.

Appeal from District Court, McIntosh County; *Lauder, J.*

Action by George C Wiles against the county of McIntosh. Judgment for plaintiff. Defendant appeals. • Reversed.

*A. W. Clyde, State's Atty.*, and *Morrill & Engerud,* for appellant.

*Herried & Williamson,* for respondent.

YOUNG, J. Plaintiff commenced this action to recover from the county of McIntosh the sum of $200, which he alleged was due to him from said county as a balance of salary as county superintendent of schools. The defendant, in its answer, denied that any balance was due to plaintiff, and pleaded the statute of limitations against plaintiff's cause of action. The answer also set up a counterclaim in defendant's favor and against plaintiff for an alleged overpayment of salary, amounting to $700, and prayed for an affirmative judgment for that sum. The case was tried to a jury. At the close of the testimony, upon motion of defendant's counsel, a verdict was directed against plaintiff on his cause of action, and upon motion of plaintiff's counsel a verdict was directed against the defendant on its counter claim. Separate judgments were entered upon the verdicts so directed. The defendant has appealed from the judgment dismissing its counterclaim, and in a statement of case duly settled has specified for review a number of alleged errors.

The only error assigned which we shall have occasion to consider relates to the verdict directed against the defendant's counterclaim. The ground for such directed verdict, as stated by plaintiff's counsel in his motion therefor, was "that the plaintiff is not liable upon the counterclaim * * * for the reason that the evidence shows that the plaintiff, in drawing his salary, acted upon the opinion of the superintendent of public instruction, * * * and for the further reason that the money was regularly paid by the regular auditing board of the county under the law, and is therefore a

voluntary payment." No other reasons than those just stated were urged, or were relied upon, apparently, by the trial court in granting the motion. It seems to have been conceded at the trial that the plaintiff had been overpaid; at least it was not seriously controverted. The plaintiff's entire contention in the trial court— and that is his chief contention in this court—was that the payments were voluntary, and that they cannot, therefore, be recovered back by the county. This contention we cannot sustain. The answer alleges that during the years 1896, 1897, 1898, 1899, and 1900 the plaintiff presented quarterly accounts for salary to the board of county commissioners, in which he claimed salary in excess of the amount limited and prescribed by law; that for the purpose of procuring the allowance of such accounts he misrepresented and overstated to said board the number of schools which were in the county, which determined the amount of his salary, and by so doing induced said board to allow each of said accounts, which covered not only the sum lawfully due him, but amounts greatly in excess of the sum due; that the sums so allowed above his lawful salary and paid by the defendant, amounted to $700. Counsel for plaintiff urge in this court two propositions in support of the verdict: (1) That there is no competent evidence of overpayment; (2) that, conceding that the plaintiff was overpaid, the payments were voluntary and cannot be recovered back. The evidence offered by the defendant in support of its counterclaim was exceedingly unsatisfactory. But we cannot agree with counsel that there is no competent evidence of overpayment. During the entire period here in question the plaintiff's salary was fixed by law. Section 652, Rev. Codes 1895, provided that the salary of county superintendents of schools shall be as follows: "In each county having * * * forty-one schools and not over fifty, $900; and for each additional ten schools, or major fraction thereof, $100 additional; provided, that in computing the salary of such superintendent no school shall be included unless the same shall have been taught at least three months during the preceding year. * * * The amount of his salary shall be determined each year by the actual number of schools or separate departments in graded schools over which such superintendent had official supervision during the preceding year, and the same shall be paid out of the county general fund monthly upon the warrant of the county auditor." By the amendment embodied in chapter 75, Laws 1897 (§ 652, Rev. Codes, 1899), county superintendents were allowed $10 for each additional school, instead of the $100 allowance for 10 schools or a major fraction thereof, as under the previous statute. The statute is not ambigious. It furnishes an absolute means of measuring the salaries of county superintendents. In the determination of such salaries it requires merely a mathematical computation upon existing facts. The controlling fact is the number of schools or separate departments of graded schools presided over by the

county superintendent, which schools or departments have been taught at least three months in the year preceding that for which the salary is claimed. Neither counties nor county officials have authority either to increase or diminish the compensation so fixed by the legislature. No special method was provided for determining the number of schools which serves as a basis for the computation of salaries. Evidently the lawmaking body considered that question might, at least primarily, be left to the integrity of superintendents. When, however a dispute arises as to the number of schools, the question is one of fact, to be determined like any other question of fact. The effect of a dispute as to the number of schools is merely to delay a computation of the amount of salary until the number can be ascertained by the county auditor, or judicially, when such course is necessary. We find from an examination of the record before us that there was before the trial court when it directed the verdict against the defendant on its counterclaim substantial evidence fairly tending to show that the plaintiff during his incumbency of the office of county superintendent of schools presented quarterly accounts for salary to the county commissioners greatly in excess of the amount due; that such accounts were verified by his oath, wherein he stated that the charges were just, and were such as were allowed by law, and that no part of the same had been paid; that the defendant relying upon such verified accounts, paid the sums so claimed by the plaintiff as and for salary. There is evidence to the effect that plaintiff overstated the number of schools in the county. Counsel for plaintiff strenuously urge that there is no evidence tending to show that the number of schools in McIntosh county, during the years in question, was less than the number necessary to authorize the payment of the salary which the plaintiff claimed and was paid; in other words, they claim that there is no evidence of overpayment. This contention is not sustained by the record. The evidence on this point is contained in a certain public document, prepared by the superintendent of public instruction, which purports to contain reports of the county superintendent of schools for McIntosh county for the years in question, in which is set forth the number of schools in which no school was taught, the number of schools taught one month and less than three months, and the number of schools taught three months and upwards. In addition to the foregoing, the defendant offered in evidence the sworn statement of the plaintiff, showing the number of schools for one of the years in question, which statement had previously been filed by him with the county commissioners. The evidence afforded by the public document referred to was admitted without objection as to its competency, and no objection was made that the same was hearsay; on the contrary, the plaintiff seems to have, at least tacitly, admitted the accuracy of the statements contained in said report; at least he did not challenge the facts therein stated, or offer any evidence to contradict the same. His only ob-

jection to its introduction was that in computing and drawing his salary for the period in question he acted upon the advice of the department of public instruction. Whether the document was admissible as against a proper and timely objection we need not determine. It is sufficient to say that it was admitted without objection, and under circumstances which, in our opinion, preclude the plaintiff from claiming that it did not constitute legal evidence as to the facts which it purported to establish. On the basis of the number of schools shown by these reports it appears that the plaintiff claimed and drew salary from the defendant in amount in excess of that to which he was entitled under the statute. That he had been so overpaid was, in effect, conceded at the trial in the lower court. His entire contention in the trial court was that the amounts in question were paid to him by the county voluntarily, and that having been so paid they could not be legally recovered back; and that constitutes his chief contention in this court.

We are unanimously of the opinion that the facts of this case do not bring the plaintiff within the protection of the rule which he invokes. The rule, as stated and recognized by this court in *Wessel* v. *Mortgage Co.*, 3 N. D. 160, 54 N. W. Rep. 922, 44 Am. St. Rep. 529, is that "where a party, with full knowledge of the facts, pays a demand that is unjustly made against him, and to which he has a valid defense, and where no special damage or irreparable loss would be incurred by making such defense, and where there is no claim of fraud upon the part of the party making such claim, and the payment is not necessary to obtain possession of the property wrongfully withheld, or the release of his person, such payment is voluntary, and cannot be recovered." As stated by Winslow, J., in *Fredericks* v. *Douglas Co.*, (Wis.) 71 N. W. Rep. 798, the rule is "that, as between man and man, money paid voluntarily, with knowledge of all the facts, and without fraud or duress, cannot be recovered merely on account of ignorance or mistake of law. * * * It is founded upon the general principle that a man may do what he will with his own. He may give it away, or buy his peace; and if he does so with knowledge of the facts, he is generally remediless." Does the evidence in this case show a voluntary payment by the county to the plaintiff under the above rule? Clearly not. On the other hand, it appears conclusively that the overpayments of salary were not voluntary under the rule as stated, and for two reasons. In the first place, the overpayments were made under a mistake of fact as to the amount due; and, in the second place, the overpayments were secured by the plaintiff through fraudulent representations and inducements consisting of his sworn accounts. It is clear that upon such facts, if the controversy were between individuals, the plaintiff could not successfully contend that the overpayments received by him were voluntary. But if it were conceded that the county officers had full knowledge of the facts before making payment, and that no

fraud or misrepresentation was practiced by the plaintiff, and that such payment was therefore voluntary so far as the auditing and disbursing officers are concerned, nevertheless the result would be the same. In this case it is not a controversy between individuals, but between an individual and a municipal corporation. The county officers who were charged with the disbursement of the county's funds were mere agents of the county, and their authority and duty in reference to county funds and the disbursement thereof was limited and defined by law. Such authority only extended to paying the plaintiff his lawful salary as authorized by the legislature, and of this limitation the plaintiff was bound to take notice. The doctrine of voluntary payment, therefore, has has no application, for the reason that no overpayments were made by the sanction or approval of the county, but were made in defiance of the statute governing the matter of payment. Public officials dealing with trust funds do not stand on the same footing as individuals dealing with their own property. As was said in *Fredericks* v. *Douglas Co.,* supra: "They are not dealing with their own. They are trustees for the taxpayers, and in dealing with public funds they are dealing with trust funds. All who deal with them know also that the public officials are acting in this trust capacity. To hold that when public officers pay out money in pursuance of an. illegal and unwarranted contract, such moneys cannot be recovered in a proper action brought in behalf of the public merely because the payment had been voluntarily made for services actually rendered, would be to introduce a vicious principle into municipal law, and a principle which would necessarily sweep away many of the safeguards now surrounding the administration of public affairs. Were this, in fact, the law, it can readily be seen that public officials could at all times, with a little ingenuity, subvert and nullify that wholesome principle of the law which prohibits their spending the public funds for illegal purposes. All that would be necessary to be done would be to make the contract, and have the labor performed, pay out the money, and the public would be remediless." The doctrine announced by the Wisconsin supreme court in the language just quoted appeals to us as sound in principle, and is well sustained by authority. See *Demarest* v. *Inhabitants of New Barbadoes Tp.,* 40 N. J. Law, 604; *Russell* v. *Tate,* 52 Ark. 541, 13 S. W. Rep. 130, 7 L. R. A. 180, 20 Am. St. Rep. 193; *Weeks* v. *Town of Texarkana,* 50 Ark. 81, 6 S. W. Rep. 504; *City of Tacoma* v. *Lillis,* 4 Wash. St. 797, 31 Pac. Rep. 321, 18 L. R. A. 372; *Williard* v. *Comstock,* 58 Wis. 565, 17 N. W. Rep. 401, 46 Am. Rep. 657; 7 Am. & Eng. Enc. Law (2d Ed.) 961, and cases cited at note 1. See, also, § 1981, Rev. Codes, where this doctrine is recognized.

The plaintiff, for the purpose of sustaining the amount paid to him as and for salary, produced in evidence a letter dated May 11, 1897, signed by Will M. Cochran, deputy superintendent of public

instruction, wherein he was advised that, in the opinion of the department of public instruction, the plaintiff, in computing his salary, was to take into consideration any and all schools, without reference to the length of the term of the same. It is urged by counsel for the plaintiff that this construction of the statue is binding upon the courts, and should be followed. It is true that in cases of doubt the contemporaneous construction of the statute by officers charged with its execution is entitled to great weight. But that rule has no application here. As before stated, the statute fixing salaries (§ 652, Rev. Codes 1899) is unambiguous in its language. It is not even doubtful. It plainly provides that the salaries of superintendents shall be computed upon the basis of the number of schools or departments of graded schools presided over by them, which have been taught at least three months during the preceding year. It is not possible to spell out of said section a construction that the salaries are to be computed upon the basis of the number of schools, "without reference to the length of term of same," as stated in the letter of advice of the deputy superintendent of public instruction. This advice might go to the plaintiff's good faith in making the overcharges in question, but it would not have the effect of making such overcharges lawful, or affect the lawful amount of his salary in any way whatever.

Counsel for plaintiff made a preliminary motion to strike from the files of this court the appellant's abstract and the statement of case, alleging as grounds therefor that the statement of case was settled in disregard of the statute and rules of this court in this: That it was served upon the attorneys for the plaintiff August 22, A. D. 1901, with a notice that the same would be settled on August 27, 1901, and that in pursuance of said notice the statement of case was settled and allowed on said last-named date, without the consent of the plaintiff, and that he was thereby deprived of the statutory period in which to propose amendments to the statement. This motion is not meritorious, and will be denied. The record does not sustain the grounds upon which the motion is based. On the contrary, the record discloses that a proposed statement of case and amendments proposed thereto by respondent were submitted to the trial judge on the 13th day of August, A. D. 1901, pursuant to a written stipulation, signed by counsel for both parties, which stipulation is contained in the record. It further appears that upon said last-mentioned date G. N. Williamson, one of the counsel for plaintiff, appeared on his behalf, and proposed amendments, which defendant refused to consent or agree to; that the court thereupon ordered that the transcript of the evidence and proceedings at the trial prepared by the official stenographer of the court, with copies of the exhibits, should be taken as the statement of case. Pursuant to such order, the transcript was incorporated in the statement, and on August 27, 1901, the trial judge appended his official cerificate thereto. After the order of the trial

judge directing that the transcript be taken as the statement, defendant's counsel served or furnishel plaintiff's counsel with a copy thereof on the date stated in their motion. This was entirely unnecessary, and was ex gratia. The trial judge had settled by order what should be contained in the statement on August 13th, pursuant to the written stipulation of counsel. It is not claimed that the statement was not settled in accordance with the facts.

For the reasons heretofore given, the judgment dismissing the defendant's counterclaim will be reversed, and the case remanded to the district court for further proceedings, and it is so ordered. All concur.