(May 28, 1924.)

INDEPENDENT SCHOOL DISTRICT No. 6, OF CARIBOU COUNTY, IDAHO, Appellant, v. S. K. MITTRY & GEORGE MITTRY, Doing Business Under the Name of NORTH PACIFIC CONSTRUCTION CO., Respondents.

[226 Pac. 1076.]

MONEY HAD AND RECEIVED—BUILDING CONTRACT—VOLUNTARY PAYMENT — MISTAKE OF LAW — MUNICIPALITY — WAIVER — VOID CONTRACT — CONTRACT DEFECTIVELY EXECUTED — EFFECT OF PERFORMANCE—CROSS-EXAMINATION—CONSIDERATION—PROMISE TO PERFORM CONTRACT—NONSUIT.

1.  The rule that voluntary payments made by reason of mistake of law cannot be recovered applies to individuals, but not to municipal subdivisions of the state.

---

Publisher's Note.

Rule respecting voluntary payment under no mistake of fact as applicable to unauthorize payment by public officer, see notes in **Ann. Cas.** 1913B, 651; **Ann. Cas.** 1916D, 745.

2. Performance of a contract which a municipality had no power to make does not validate it but performance by the other party of a contract which the municipality had power to make may furnish ground for enforcing it against the municipality, though it was defectively and irregularly executed.

3. A promise to do, or the doing of, that which one is already bound by contract to do is not a valid consideration.

APPEAL from the District Court of the Fifth Judicial District, for Caribou County. Hon. Robert M. Terrell, Judge.

Action for money had and received. Judgment of nonsuit. *Reversed.*

Budge & Merrill, for Appellant.

Public moneys paid in excess of amount allowed by law may be recovered. (*Ada County v. Gess,* 4 Ida. 611, 43 Pac. 71.)

An overpayment made by a city to a contractor for work done under the contract may be recovered. (*City of Chicago v. Weir,* 165 Ill. 582, 46 N. E. 725.)

Public moneys improperly paid are not voluntary in the sense that payments made by one individual to another may be, and such moneys can be recovered. (*Pocahontas County v. Katz-Craig Contracting Co.,* 181 Iowa, 1313, 165 N. W. 422; *Erie County v. Town of Tonawanda,* 95 Misc. Rep. 663, 159 N. Y. Supp. 714; *Board of Commissioners v. McLean,* 50 Colo. 602, 115 Pac. 525.)

Money improperly paid as a bonus to secure the building of a grist-mill and electric light plant may be recovered as money had and received. (*Village of Morrice v. Sutton,* 139 Wis. 643, 103 N. W. 188; *Ripley v. Case,* 78 Mich. 126, 18 Am. St. 428, 43 N. W. 1097; *McDonald v. Franklin County,* 125 Ky. 205, 100 S. W. 816.)

Promise to do or doing what promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, consideration is unreal. (9 Cyc. 347; *Sullivan v. Sullivan,* 99 Cal. 187, 33 Pac. 862; *Harris v. Cas-*

*sady,* 107 Ind. 158, 8 N. E. 29; *Schuler v. Myton,* 48 Kan. 282, 29 Pac. 163.)

Neither the promise to do nor the actual doing of that which the promisor is by law or subsisting contract bound to do is a sufficient consideration to support a promise in his favor. (*Gaar Scott & Co. v. Green,* 6 N. D. 48, 68 N. W. 318; *Allen v. Plasmeyere,* 3 Neb. (Unof.) 187, 90 N. W. 1125; *Esterly etc. Machine Co. v. Pringle,* 41 Neb. 265, 59 N. W. 804.)

Otto E. McCutcheon, for Respondent.

A contract with a municipality, although originally invalid, fully executed, where the municipality received the benefits of same, will not be set aside on the demand of the municipality unless the equities of the case require. (*New Haven v. Weston,* 87 Vt. 7, 86 Atl. 996, 46 L. R. A., N. S., 921, at 926; *Pillager v. Hewitt,* 98 Minn. 265, 107 N. W. 815; *Farmer v. St. Paul,* 65 Minn. 176, 67 N. W. 990, 33 L. R. A. 199; *Brown v. Atchison,* 39 Kan. 37, 17 Pac. 465; 5 McQuillin, Mun. Corp., sec. 2488, and cases cited.)

Appellant ratified all irregularities by settling with the contractor and paying his bill. (*Munk v. City of Watertown,* 67 Hun. 261, 22 N. Y. Supp. 227, at 230; *People v. Swift,* 31 Cal. 26.)

A contractor may recover on a contract with a municipality irregularly made, where it has been fully executed and beneficial to the municipality, or has been ratified, or confirmed, or the municipality has estopped itself from denying it, or where the circumstances disclose an implied contract. (*Watkins v. School Dist.,* 85 Kan. 769, 118 Pac. 1069; *New Haven v. Weston, supra; Pillager v. Hewitt, supra; Farmer v. St. Paul, supra; Brown v. Atchison, supra; Steiner v. Polk,* 40 Or. 124, 66 Pac. 707.)

McCARTHY, C. J.—Respondents constructed a school building for appellant. This action is to recover $2,950 which appellant claims was paid respondents in excess of the contract price, the contention being that the payment was unlawful. Respondents contend that this money was prop-

erly paid to them on certificate of the supervising architect in accordance with the contract, that appellant by making the payment waived the right to claim that the amount was not due. They also claim that their bid was made in reliance upon the selection by appellant of a certain site for the building and the representation of the supervising architect that only earth would have to be removed in excavating; that thereafter appellant changed the site of the building thereby necessitating the removal of rock in excavating; that thereupon, in order to induce respondents to proceed with the work, appellant agreed to pay the reasonable cost of removing the rock which was the amount in question. Upon the trial a motion of nonsuit was granted, and judgment entered for respondents, from which this appeal is taken. The principal assignments of error, and the only ones which we deem it necessary to mention, are that the court erred in granting the nonsuit and rendering judgment of dismissal, and in permitting respondents, on cross-examination of appellant's witnesses, to go into the question of the alleged change of location.

We will first consider the question of waiver. The rule that voluntary payments made by reason of mistake of law cannot be recovered applies to individuals, but not to municipal subdivisions of the state. (*Ada County v. Gess*, 4 Ida. 611, 43 Pac. 71; *Pocahontas County v. Katz-Craig Contracting Co.*, 181 Iowa, 1313, 165 N. W. 422; *Erie County v. Town of Tonawanda*, 95 Misc. Rep. 663, 159 N. Y. Supp. 714; *Board of Commrs. v. McLean*, 50 Colo. 602, 115 Pac. 525.) In ruling on the nonsuit the district court apparently relied on the following language found in article 27 of the specifications, to wit:

"The making and acceptance of the final payment shall constitute a waiver of all claims by the owner, otherwise than under articles 16 and 29 of these conditions or under requirement of the specifications, and of all claims by the contractor, except those previously made and still unsettled."

This language, however, clearly refers to a claim against the contractor, based on defective work or similar cause, and not to an overpayment above and beyond the contract price.

Respondents invoke the rule that, while the performance of a contract which a municipality had no power to make does not validate the contract, yet the performance by the other party of a contract which the municipality had power to make may furnish ground for enforcing it against the municipality, though it was defectively and irregularly executed. This rule is recognized by this court in *Deer Creek Highway Dist. v. Doumecq Highway Dist.*, 37 Ida. 601, 218 Pac. 371. The rule is a sound one but there is a question whether it applies to this case. At the time the dispute over the rock first arose a special meeting of the board of trustees was held. Respondents insisted that the board agree to pay the entire cost of excavating the rock. By majority vote of those present the trustees agreed to pay approximately one-half or $1,500. This meeting was irregular because proper notice had not been given as required by the statute, and all the trustees were not present. Under the rule above stated, however, this irregularity would not be fatal to the agreement to pay the $1,500 if the board had authority to make it. The question is whether it had such authority. This we will consider a little later. Even if there were a valid agreement to pay the $1,500, this would not affect the balance.

The architect gave respondents certificates for the amount in controversy and the treasurer paid them. Under the specifications the contract price, and the price of any extras authorized by appellant, were to be paid on certificate of the architect, but there can be no contention that the treasurer had authority to pay out sums in excess of the contract price or the price of extras duly authorized by the trustees, merely on certificate of the architect.

If it be contended that a dispute had arisen which gave rise to an honest, though doubtful, claim on the part of respondents, which they forebore to press in consideration of appellant's offer to pay an amount in addition to the contract price, the answer is that the evidence does not support such a contention. Falkenberg testified:

"They had called a school board meeting.  Mr. Mittry, the general contractor called a special meeting,—I believe it was a special meeting on account he struck rock in the excavation, and he quit excavating and said, 'I won't go any further,' before we would say what to do about the work.  I believe it was a special meeting, or a regular meeting,—I could not tell to-day whether it was a special meeting or not.  Well, he called a meeting and talked the matter up about them rocks, and he talked quite a while about it, and the school board understood it this way: That the excavation should be done any way in spite of rock, or no rock, and the general contractor said that he was informed that there would be no rock in the excavation and he figured according to that, and they tried to settle the matter, and some member of the board, I believe,—I could not tell any more who,—made a motion to pay half the cost of excavating the rock, but on the other side, the contractor said he could not agree to that; that he would have to have it all or fight.  It was left unsettled in my opinion, but anyhow I knowed the boiler room had to be taken out no matter who paid for it, because we couldn't run the school without the boiler room so he went on with the work.  I don't know what he thought about it, anyway he went ahead with the work, and one day he came around to me and said he needed money.  He said they had hired a subcontractor to shoot out the rock, and he come around and said he needed some money.  I said, 'I couldn't give you any more right now than about one-half I think it will be,' because it wasn't done then, and I didn't know the amount of rock. I would have to use the instrument first, and as close as I could estimate it it would be about $1,500.  That would be about half, and on the strength of this I issued the certificate."

The minutes of the special meeting of the trustees on October 10th show the following:

"The matter of encountering rock in the basement of the new building was brought up for discussion, Mr. Mittry being present.  He stated that his bid on the building was

on the excavation of earth and he was led to this by the statement of the architect, Mr. Boyer, that there was no rock in the foundation or to be excavated and that a bid on rock was not necessary. Under these circumstances he insisted that the extra cost of excavation would have to be done or paid for by the district. After some discussion, a motion was made by Mr. Carr that in view of the fact that nothing was said in the specifications regarding rock or in the contract, that the district should pay one-half of the extra cost of excavating the rock. Seconded by Mr. Lallatin. Was carried.''

The board offered to pay one-half of the cost of excavating the rock. There is no evidence that this was accepted by respondents. On the contrary, Falkenberg testified that they persisted in their claim for the full amount. Even if respondents were able to prove that they had an honest though doubtful claim, and forebore to press it because of the offer of the board to pay $1,500, this would not affect the balance sued for.

We will next consider the matter of the alleged change of location, which the court permitted respondents to go into on cross-examination of appellant's witness. Appellant objected on the ground that this was improper cross-examination and part of respondents' affirmative defense. This objection should have been sustained. Aside from this the evidence introduced did not furnish ground for a nonsuit. The only witness who testified on this point was Falkenberg, one of the architects. He said that the board picked out a certain spot for the building site and they drove temporary stakes. He did not make any soundings at that time. After the contract was signed he moved the site of the building back a little over ten feet. When asked the following question:

''Well, now, so far as the excavation is concerned, what was the effect of moving the building back?''

He answered:

''I didn't know any special effect about it.''

"Q. Wasn't the effect to throw the boiler-room and excavation into solid rock, where if it had been left as originally planned it would have been in earth?

"A. I could not—I don't know about this because I wouldn't simply know because I couldn't look below the ground."

After he got the four corners located correctly he made soundings and found no rock. The location of the building was not shown on the plans. He moved the building back after respondents signed the contract. He made the soundings after he had definitely located the building. There is nothing in the evidence to show that respondents in making their bid and entering into the contract relied on the temporary location. There is nothing to show that moving the permanent location ten feet from the temporary location changed the situation or increased respondents' burden so far as the removal of rock is concerned.

The minutes of the meeting of October 10th recite that respondents stated they had been told by one of the architects that there was no rock to be excavated. There is no evidence to substantiate this. Moreover, no fraud is pleaded.

We come now to the most important question presented by this case. Appellant contends that respondents were bound to do the rock work under the contract. Respondents contend that they were not. The answer to this question determines whether or not the board had authority to promise to pay $1,500 extra. It is elementary that a promise to do, or the doing of, what one is already bound by contract to do, is not a valid consideration. (1 Williston on Contracts, secs. 130, 130A.) But the matter goes even deeper than that. If respondents were not bound to do the rock work under the contract, but did it with the knowledge of the board, and appellant received the benefit of it, then appellant would be bound to pay for it, and certainly could not recover the amount when paid. Under such circumstances appellant could have entered into a contract to pay for this work. The fact that it had not entered into any formal contract would not prevent recovery for

the work done. The paragraphs of the specifications upon which respondents bid and the contract was founded are as follows:

"EXCAVATING. Excavate for footings and sub-footers, piers, area and foundation walls to depths, and otherwise as figured and shown by the sections, also excavate for boiler, coal and fan room as, and where shown by the plans. Trenches for footers to be properly stepped where necessary. Footers shall be built not on made ground. In all cases the excavating for footers shall extend down into the solid earth.

"The surplus earth, after back filling and grading around the building, and all stone and boulders are to be removed from the premises at the cost and expense of the contractor. At final completion of the building, remove all debris caused by building operations from the premises. The plumber and steam heating contractor to do the necessary trenching for heater, supply and return pipes."

The evidence shows that 545 cubic yards of rock were excavated. It does not go into detail about the matter. We do not know whether the rock was in one body, a thin layer spread over a large surface, or several small bodies. The contract expressly requires respondents to remove all stone and boulders. Does this include rock? The words "stone" and "rock" are often used indiscriminately. Accurately speaking, they probably have a slightly different shade of meaning. Webster's New International Dictionary defines stone as follows:

"1. Concreted earthy or mineral matter: a A small piece of rock or one of moderate size; as, the boy threw a stone; pebbles are rounded stones. b Rock or rocklike matter as a material, esp. for building; as a house of stone. Very large masses of stone are generally called rock; small or quarried masses are called stones; and the finer kinds, gravel or sand, or grains of sand"; and the same work defines rock as follows:

"1. A large concreted mass of stony material; a large fixed stone; also, broken pieces of such masses. See stone."

We are of the impression that rock and stone may come under different classifications in building contracts. But we cannot say the matter is so clear that we know judicially that the rock work done by respondents in excavating did not come under the terms of the contract. It will require further evidence to make possible a judicial answer to that question. We cannot say that respondents' contention in this regard is so clearly sustained by the evidence that a nonsuit was justified.

We conclude that the granting of the nonsuit was not justified on any of the grounds which have been suggested, or which occur to us. The judgment is reversed and the case remanded for a new trial in accordance with the views herein expressed. Costs to appellant.

William A. Lee and Wm. E. Lee, JJ., concur.