CHRYSLER LIGHT & POWER COMPANY, a Corporation, Appellant-Respondent Cross Appeal v. CITY OF BELFIELD, Stary County, North Dakota, a Municipal Corporation, Respondent-Appellant.

(224 N. W. 871.)

Opinion filed April 10, 1929.

*J. W. Sturgeon,* for appellant-respondent.

*H. E. Haney* and *C. H. Starke,* for respondent-appellant.

CHRISTIANSON, J.   Plaintiff brought this action to recover for electric current furnished to light the streets of the defendant city.   The action is predicated upon an order of the Board of Railroad Commissioners fixing the rates to be charged for such electric current, and directing that the minimum monthly charge against the city shall be $100.   The defendant admits that the electric current was furnished and alleges by way of an affirmative defense that the plaintiff was operating an electric light plant within the defendant city under a

franchise granted by the city; that such franchise fixed the rates to be charged for electric current to be furnished by the plaintiff to the defendant for street lighting purposes; that the defendant accepted such franchise and thereby entered into a contract with the defendant city to furnish electric current at the rates so specified; that the rates so fixed in the franchise under which the plaintiff did business are controlling upon the rights of the parties to this action. By way of counterclaim the defendant alleges that it has paid the plaintiff $887.01 in excess of the rates prescribed by the franchise; and defendant demands judgment that plaintiff's action be dismissed and that it have judgment against the plaintiff for the amount so paid in excess of the franchise rates. The plaintiff interposed a reply wherein it admits that the rates fixed in the franchise were as alleged by the defendant; also that defendant has made payments as alleged in its answer and counterclaim; but it alleges that the board of railroad commissioners upon application made by the plaintiff, after hearing had on April 7, 1921, made an order increasing the rates to be paid by the defendant for the electric current furnished by the plaintiff for street lighting purposes; that defendant voluntarily paid for electric current according to the rates fixed by the railroad commissioners; that the rates so fixed by the railroad commissioners are controlling, and that, consequently, defendant has not overpaid plaintiff, and is still indebted to it for the amount demanded in the complaint.

The case was submitted to the court for determination upon a stipulated statement of facts. The trial court disallowed defendant's counterclaim but ordered judgment in favor of the plaintiff only for such sum as would be owing to it according to the rates specified in the franchise. In other words, the trial court held that plaintiff was not entitled to recover in accordance with the rates fixed in the order of the board of railroad commissioners and was entitled to recover only according to the rates agreed upon in the franchise; but that the defendant was not entitled to recover from the plaintiff the overpayments which it had made. Judgment was entered accordingly and both parties have appealed.

As indicated, the material facts in this case are not in dispute. They are as follows: On or about March 18, 1915, the then village of Belfield granted a franchise to one George S. Chrysler to construct and

maintain an electric light and power plant within the village of Belfield and to carry on the business of manufacturing and selling electric light and power to consumers thereof for a period of twenty-five years. The ordinance consists of some seventeen sections and contains specific regulations relating to the construction of the plant and the operation thereof. It also contains a provision giving the village of Belfield an option to purchase the plant at the end of fifteen years. The franchise was duly accepted by Chrysler in the manner prescribed in the ordinance. On June 29, 1915, George S. Chrysler duly assigned and transferred the franchise to the plaintiff Chrysler Light & Power Company, and such assignment was agreed to by the village of Belfield.

Under the terms and conditions of the ordinance granting such franchise the plaintiff company agreed to furnish electricity to the village of Belfield for street lighting purposes, at the following rates:

First 100 kilowatts at 12 cents per kilowatt hour.

Next 100 kilowatts at 10 cents per kilowatt hour.

Next 100 kilowatts at 9 cents per kilowatt hour.

All additional kilowatts to the above at 8 cents per kilowatt hour as measured by wattmeters.

It was further agreed that the village of Belfield would take at least 850 kilowatts per month of electrical energy for street lighting purposes and pay for the same at the specified rates.

Some time after the franchise had been granted, the village of Belfield was duly incorporated as a city under the laws of the state of North Dakota. After it had been so incorporated, and on or about June 4, 1919, an ordinance was duly enacted by the city council of the city of Belfield amending the franchise so granted by the village of Belfield to said George S. Chrysler and by him assigned to the plaintiff. Under the amendatory ordinance the plaintiff agreed to furnish, and the defendant agreed to pay for, electrical energy for street lighting purposes at the following rates:

First 100 kilowatts at 14 cents per kilowatt hour.

Next 100 kilowatts at 12 cents per kilowatt hour.

Next 100 kilowatts at 11 cents per kilowatt hour.

All additional kilowatts to the above at 10 cents per kilowatt hour as measured by wattmeters.

The defendant city of Belfield further agreed to take and pay for "at least $75 worth of electrical energy per month at rates not to exceed those" above specified. The amendatory ordinance required the plaintiff company, within fifteen days after the final passage of such ordinance, to file with the city auditor of the city of Belfield, for itself and its assigns, an acceptance in writing of the terms and conditions of the amendatory ordinance. The terms of the ordinance as amended were accepted and agreed to by the plaintiff and electricity was furnished and paid for according to the provisions thereof until after the order of the board of railroad commissioners hereinafter referred to. The franchise as so amended has not been further altered or changed by the parties thereto in any manner whatsoever.

On or about the 27th day of December, 1920, the plaintiff filed its application with the board of railroad commissioners of the state of North Dakota for permission to increase the rates to be charged by the plaintiff for electrical energy and power to be furnished to the defendant city of Belfield and the inhabitants thereof. The board of railroad commissioners conducted a hearing upon such application in April, 1921, at which the city of Belfield appeared by its officers. On May 10, 1921, the board of railroad commissioners made its findings of fact and conclusions of law to the effect that the reasonable and just rates to be charged by the plaintiff for the electric current to be furnished to the defendant for street lighting purposes were as follows:

First 100 kilowatt hours at 15 cents per kilowatt hour.

Next 100 kilowatt hours at 13 cents per kilowatt hour.

Next 100 kilowatt hours at 12 cents per kilowatt hour.

All in excess of 300 kilowatts to the above at 11 cents per kilowatt hour. Minimum bill $100.00 per month.

No appeal was taken from said order and no action has been taken by the board of railroad commissioners to abrogate or change these

rates. The city of Belfield paid for electric current furnished by the plaintiff according to the rates so specified by the board of railroad commissioners up to and including the month of January, 1927; but from and after that date the defendant city has refused to pay according to the rate specified by the board of railroad commissioners but has offered to pay in accordance with the rates specified in the franchise.

The questions presented for determination are: 1. Is the plaintiff entitled to compensation in accordance with the rates agreed upon in the franchise or is it entitled to be compensated according to the rates prescribed by the board of railroad commissioners? and, 2. If the plaintiff is entitled to recover only according to the rates prescribed in the franchise is the defendant entitled to recover the overpayments made during the time it paid in accordance with the rates prescribed by the board of railroad commissioners? These questions will be considered in the order stated.

1. The Constitution of this state provides:

"No law shall be passed. by the legislative assembly granting the right to construct and operate a street railroad, telegraph, telephone or electric light plant within any city, town or incorporated village without requiring the consent of the local authorities having the control of the street or highway proposed to be occupied for such purposes." N. D. Const. § 139.

The legislature has expressly authorized a city council to provide for the lighting of the streets, alleys, avenues and public grounds and "to provide for the furnishment of light to the inhabitants of the city." Comp. Laws 1913, § 3599–(11).

The power reserved by § 139 of the Constitution to a village or city to either grant or refuse permission to an electric light company to occupy the streets of such village or city with the structures of such lighting company is not limited to a simple granting or denial of permission to use the streets for such purposes; a village or city may permit such use of its streets on certain conditions only, and if the electric light company accepts the permission or franchise so granted, all valid conditions or restrictions attached thereto become binding upon it. 3 Dill. Mun. Corp. 5th ed. pp. 1952, 2144, et seq.; 19 R. C. L. p. 1153; 4 McQuillin, Mun. Corp. §§ 1644, et seq.; 44 C. J. pp. 977, et

seq. The village (or city) of Belfield had power to require compensation for the use of its streets, avenues or alleys by the electric light company (4 McQuillin, Mun. Corp. § 1645; Dill. Mun. Corp. 5th ed. p. 1957; 19 R. C. L. p. 1153); or it might stipulate, as it did, that certain service should be furnished to the city at a certain stipulated price,—it might even have stipulated that such service should be furnished to the city without charge. McQuillin, Mun. Corp p. 3455. The plaintiff having accepted the franchise, it also accepted the conditions, and it cannot ask to be relieved from its contract and that another be made in place thereof because it failed to make an advantageous bargain with the city.

The city of Belfield had authority to contract with an electric light company for the lighting of its streets. Comp. Laws 1913, § 3599—(11); 3 Dill. Mun. Corp. 5th ed. § 1302; 4 McQuillin, Mun. Corp. §§ 1717, 1718; 44 C. J. 76; Reed v. Anoka, 85 Minn. 294, 88 N. W. 981. The power conferred upon a city council to contract for the lighting of the streets of the city at certain fixed rates is quite different from the power to regulate the rates of an electric light company doing business within the city. 3 Dill. Mun. Corp. 5th ed. § 1303; 4 McQuillin, Mun. Corp. §§ 1733, et seq.; Reed v. Anoka, supra. In contracting for the lighting of its streets a city acts in a quasi private or proprietary capacity and exercises its business powers; in regulating rates it exercises legislative and governmental powers. 3 Dill. Mun. Corp. 5th ed. § 1303; 4 McQuillin, Mun. Corp. §§ 1717, et seq.; Reed v. Anoka, supra; Pond, Pub. Utilities 3d ed. §§ 5, et seq. In so far as the franchise in question here stipulates a definite price at which the electric light company agrees to furnish electric current for lighting the streets of the city, it constitutes a contract between the city of Belfield and the plaintiff utility company. In making such contract the city was not acting as an agent of the state but was acting for and in the interest of the city as a legal personality. Pond, Pub. Utilities, 3d ed. pp. 16, 17. In these circumstances the question whether the rates agreed upon by the plaintiff utility and the defendant city were then, or subsequently became, confiscatory is wholly immaterial. St. Cloud Pub. Serv. Co. v. St. Cloud, 265 U. S. 352, 68 L. ed. 1050, 44 Sup. Ct. Rep. 492. The contract so entered into is binding upon

the parties thereto, and so far as concerns the questions involved here their respective rights and obligations are measured thereby.

The board of railroad commissioners has only such powers to regulate rates of public utilities as have been conferred upon it by the legislature. Such board can initiate no public policies of its own; it can act in no field which the legislature has not authorized it to enter. Backus-Brooks Co. v. Northern P. R. Co. (C. C. A. 8th) 21 F. (2d) 4; Idaho Power Co. v. Thompson, 19 F. (2d) 547. See also State ex rel. Lemke v. Chicago & N. W. R. Co. 46 N. D. 313, 179 N. W. 378.

The power to regulate rates of electric light companies was conferred upon the board of railroad commissioners by chapter 192, Laws 1919, commonly known as the Public Utilities Act. This act furnishes the sole basis for the power sought to be exercised by the board of railroad commissioners in making the order involved here. If the power to make such order is not conferred thereby it admittedly does not exist.

We fail to find in the Public Utilities Act any language indicative of a legislative intention to confer any authority upon the board of railroad commissioners to interfere with the rates for electric current to be furnished by an electric light company to a city, where such rates are fixed by contract in the franchise granted by the city to the electric light company. As was said by this court in Western Electric Co. v. Jamestown, 47 N. D. 157, 169, 181 N. W. 363:

"It (the Public Utilities Act) does not deprive a city of its power and privileges in creating or enforcing a franchise granted for the use of its streets or highways by a public utility. It does not pretend to grant the railroad commissioners the power to determine what shall be the consideration to be paid for the use or exercise in a city of the privilege of a franchise. The defendant city had the authority to grant or permit a franchise to the plaintiff for the use of its streets and highways and to regulate the use of the same. It still has that authority. Comp. Laws 1913, § 3599 (13–24). It is specifically reserved to a city by the constitutional provision which provides that no law shall be passed by the legislative assembly granting the right to construct and operate an electric light plant within any city without requiring its consent. N. D. Const. § 139. This right of franchise granted to the plaintiff in 1902 was a right of value, a right of property, and validly, the subject of a legal contract. . . . Pond, Public Utilities,

114; 4 McQuillin, Mun. Corp. 1617–1636. The franchise so granted constituted a contract, . . . The city had the right to exact a charge for the use of its streets . . . or, as a consideration for the franchise."

It is unnecessary to consider whether the legislature can interfere with rates for electric current for street lighting, which have been fixed in the franchise granted by a city to an electric light company. The question of legislative power to interfere with such rates can arise only when and if the legislature attempts to interfere with such rates, or to confer upon some regulatory board the power to do so; and we are wholly agreed that the legislature has not conferred or attempted to confer any such authority upon the board of railroad commissioners by chapter 192, Laws 1919. The order entered by the railroad commission was clearly outside of its powers; such order created no obligations and vested no rights.

2. It is a well settled rule that a payment which has been made under a mistake of fact as regards the liability of the payor may be recovered. 22 Am. & Eng. Enc. Law, p. 621; Keener, Quasi Contr. pp. 26, et seq.; Krump v. First State Bank, 8 N. D. 75, 76 N. W. 995; Wessel v. D. S. B. Johnston Land & Mortg. Co. 3 N. D. 160, 44 Am. St. Rep. 529, 54 N. W. 922; 21 R. C. L. pp. 164, 165. But a different rule is generally recognized as regards a payment made under a mistake of law. Although there are some cases to the contrary, the rule established by the great weight of authority is that, as between individuals, money voluntarily paid on a claim of right with full knowledge of all the facts, without fraud, duress or compulsion, cannot be recovered because the payor at the time of payment was ignorant of or mistook the law as to his liability. 22 Am. & Eng. Enc. Law p. 628; 30 Cyc. 1313; 21 R. C. L. p. 171. The rule that a payment made under mistake of law cannot be recovered is generally held to bar the right to recover money voluntarily paid under an unconstitutional statute or ordinance. 30 Cyc. pp. 1315, 1316; Wingerter v. San Francisco, 86 Am. St. Rep. p. 294, and note (134 Cal. 547, 86 Am. St. Rep. 294, 66 Pac. 730).

The legal obligation to repay money received by mistake is expressly recognized and declared by § 5946 of the Civil Code (Comp. Laws) of 1913 which provides:

"One who obtains a thing without consent of its owner or by a consent afterwards rescinded, or by an unlawful exaction which the owner could not at the time prudently refuse must restore it to the person from whom it was thus obtained, unless he has acquired a title thereto superior to that of such other person, or unless the transaction was corrupt and unlawful on both sides."

See § 625 Draft of a Civil Code for the State of New York; prepared by the Commissioners of the Code, 1862, and Annotations.

Other sections (relating to contracts) of our Civil Code provide that an apparent consent to a contract is not real or free when obtained through "mistake" (§ 5844); that mistake may be either of fact or of law (§ 5853); that a mistake of law constitutes a mistake within the meaning of the chapter (on contracts) only when it arises from: (1) A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or (2) A misapprehension of the law by one party of which the others are aware at the time of contracting but which they do not rectify (§ 5855). That a party to a contract to which consent has been obtained through mistake may rescind the same. § 5934.

Section 5855 supra, is referred to in the opinion in Bismarck v. Burleigh County, 49 N. D. 205, 190 N. W. 811, as having some bearing upon the right of the city to recover moneys paid to the county under a mistake of law. While we are wholly agreed that that case was correctly decided and that the complaint stated a cause of action in favor of the city and against the county for the moneys sought to be recovered, we are inclined to the view that § 5855 supra, had no application, and that what was said in regard thereto was not necessary to a decision in the case and, hence, is not controlling as precedent. Ogden v. Saunders, 12 Wheat. 333, 6 L. ed. 606. As said, § 5855, supra, is a part of the law of contracts and is found in the article relating to consent of parties to a contract. According to its provisions a party who has consented to a contract through a mistake of law, as defined in that section, may rescind the contract and upon rescission invoke an appropriate remedy to vindicate his rights. Wingerter v. San Francisco, 134 Cal. 547, 86 Am. St. Rep. 294, 66 Pac. 730. Hence the only relation § 5855 can have to an action to recover moneys

paid under a mistake of law is that it may furnish the basis for the rescission of a contract, the consent to which has been obtained through a mistake of law. But the right to recover money paid under mistake does not rest in contract. The right to recover such moneys is bottomed on an obligation created by law as contra-distinguished from one created by the parties through contract. Keener, Quasi Contr. pp. 26, et seq.

In many jurisdictions that adhere to the rule that payments made under a mistake of law are not recoverable, an exception is recognized as regards the payment of public moneys,—and this is especially so as regards payments by one public officer to another, or by one municipal corporation or subdivision to another. 30 Cyc. pp. 1315, 1316; 22 Am. & Eng. Enc. Law, p. 629; 3 Williston, Contr. § 1590. See also 41 C. J. p. 51. Different reasons have been given for the rule that payments by public officers under mistake of law may be recovered (Woodward, Quasi Contr. § 40); but however stated, the basic reason (aside from cases wherein it is held that the determination by the officers of the amount and validity of the claim was of such nature as not to be subject to collateral attack) is, that the public officers who made the payments were not dealing with their own property but with funds belonging to the taxpayers, and held by the public officers as trustees; and that consequently, the erroneous or wrongful payment constituted a misuse of trust funds and might be recovered as such by the owners. Allegheny County v. Grier, 179 Pa. 639, 36 Atl. 353; Ellis v. State Auditors, 107 Mich. 528, 65 N. W. 579. See also Wiles v. McIntosh County, 10 N. D. 594, 599, 88 N. W. 710; Agnes Twp. v. Grand Forks County, 56 N. D. 505, 218 N. W. 212; State ex rel. Buder v. Hackmann, 305 Mo. 342, 265 S. W. 536.

The rule that public moneys are trust funds and that payment under a mistake of law in the course of governmental activity may be recovered has been recognized in this state. Bismarck v. Burleigh County, 49 N. D. 205, 190 N. W. 811; Agnes Twp. v. Grand Forks County, 56 N. D. 505, 218 N. W. 212; Wiles v. McIntosh County, 10 N. D. 594, 88 N. W. 710. We are fully in accord with this rule and have no intention of departing therefrom. But, as has been indicated, a city is vested with two classes of power: the one, governmental, legislative or public; the other in a sense, proprietary or private. 1 Dill. Mun.

Corp. 5th ed. § 109. "In *its governmental or public character,* the corporation is made, by the state, one of its instruments, or the local depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself. . . . But, *in its proprietary or private character,* the theory is that the powers are supposed not to be conferred primarily or chiefly from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct *legal personality* or *corporate individual;* and as to such powers, and to property acquired thereunder, and contracts made thereunder," the corporation is regarded as having the rights and obligations of a private, rather than those of a public, corporation. 1 Dill. Mun. Corp. 5th ed. § 109. Winona v. Botzet, 23 L.R.A.(N.S.) 204, 94 C. C. A. 563, 169 Fed. 321, 21 Am. Neg. Rep. 445; Illinois Trust & Sav. Bank v. Arkansas City, 34 L.R.A. 518, 22 C. C. A. 171, 40 U. S. App. 257, 76 Fed. 271; 43 C. J. pp. 183, 184.

In view of the fundamental distinction as regards the rights and liability of a city, dependent upon whether its officers exercise one or the other of the two classes of powers referred to, it would seem to follow that a different rule should apply as regards the right of a city to recover moneys paid under a mistake of law in the exercise of each of such powers. In business relations arising in the proprietary or quasi-private capacity of the city it is held to the same standard of just dealing that the law prescribes for private corporations and individuals. Omaha Water Co. v. Omaha, 85 C. C. A. 54, 156 Fed. 929; 43 C. J. p. 183. It follows that a different rule should, and does, apply as regards moneys paid by a city under a mistake of law upon claims which arise incidental to some business transaction of purely municipal concern and involving the business or proprietary powers of a city, from that which applies as regards the payment of public moneys under a mistake of law for salaries to public officers, and other claims which arise against a city in its political or governmental character. As regards transactions of the nature involved here, that is, transactions involving the business powers of a city, there seems to be no good reason why the city should not be subject, in a general way, to substantially the same rules as those which apply to private corporations in similar transactions. The laws of this state require that bills

against a city be presented to and allowed by the city council (or commission) of the city. Comp. Laws 1913, §§ 3626, 3599 (1, 2). There is no contention that the payments in question here were not made upon bills so presented and allowed; and we must, of course, assume under the facts stipulated that the bills were duly presented and allowed. In other words, we must assume that the payments in question here were made voluntarily by the city with full knowledge of all the facts and of all rights. The moneys sought to be recovered were not paid in such circumstances as to afford a right of recovery under section 5946 supra. They were not paid as a result of any contract or agreement between the parties, nor were they obtained by the plaintiff by an unlawful exaction which the defendant city could not at the time prudently refuse. Home Coal Co. v. Macon, 216 Mo. App. 590, 262 S. W. 59. No greater injury could have resulted to the city from refusing to pay in the first instance than could and did result to it from refusing to pay at a later date. It is conceded that the moneys were paid solely because of the order of the board of railroad commissioners; and for reasons deemed satisfactory to them the agents of the city entrusted with the management of its business affairs and the auditing and allowing of bills for the specific service in question here paid the moneys voluntarily with full knowledge of all the facts and with full knowledge of all the rights of the city.

This is not a case where a municipal officer, through a mistake of law, has paid to another public officer (Ellis v. State Auditors, 107 Mich. 528, 65 N. W. 577; Allegheny County v. Grier, 179 Pa. 639, 36 Atl. 353) or to another municipal corporation or subdivision (Independent School Dist. v. Mittry, 39 Idaho, 282, 226 Pac. 1076) an amount in excess of that which the law authorized or directed such officer to pay; nor is it a case where a municipal officer charged with the duty of paying claims against a political corporation or subdivision has paid an amount in excess of that which he was directed by law to pay. State ex rel. Buder v. Hackmann, 305 Mo. 342, 265 S. W. 532; State v. Young, 134 Iowa, 505, 110 N. W. 292, 13 Ann. Cas. 345. It is a case arising in the conduct of the purely local business affairs of a city; where the agents of the city, vested with full power to contract for a certain commodity on behalf, and for the use, of the city itself; where such officers are further authorized to audit, allow and pay

claims arising against the city for the commodity so furnished, and where such officers have audited and allowed such claims and deliberately, without fraud, undue influence or coercion, have directed that such claims be paid. We are agreed that in these circumstances the city may not recover the moneys so paid merely because the amounts paid were in excess of what is ultimately determined to be the legal liability of the city.

It follows from what has been said that the judgment appealed from must be and it is affirmed. Inasmuch as neither party has prevailed on its appeal no costs will be allowed.

BURKE, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.